## Ex Parte A. K. Edwards.

1. Under our statute error, will lie to the Supreme Court from a *refusal* to grant a writ of *habeas corpus*.

2. In the absence of any statutory limitation or restriction, the power of the several courts over the matter of "contempts" is omnipotent, and its exercise in any particular case is not to be questioned by any other tribunal. It is the great bulwark established by the common law for the protection of courts of justice, and for the maintainance of their dignity, authority and efficiency.

3. By our statute, the power to punish for "contempts" is limited to fine or imprisonment; the fine in any case not to exceed one hundred dollars, or imprisonment thirty days; and this statute is made to apply as well to the courts of equity as to the courts of common law.

4. As applicable to Courts of Chancery, the restrictions in the statute must be confined to such acts as are the subject merely of *punishment*; it never was designed to deprive that court of its ancient authority to enforce its affirmative orders or decrees, or any order or decree, whether affirmative or otherwise, which may be pronounced at the final hearing of the cause.

Writ of error from a judgment or order of Leon Circuit Court.

This case was decided at Tallahassee.

In November, 1866, Green A. Chaires and Benjamin Chaires filed their bill in Leon Circuit Court against A. K. Edwards, setting up various circumstances, claims and obligations existing between the said complainants and defendant, arising from certain transactions between said parties

connected with the making of a crop of cotton in Leon county in 1866, stating that the defendant had wrongfully removed a portion of said cotton and was about to remove the balance, and asking for an injunction to restrain him from the removal of the cotton from the plantation or the sale of the same. An injunction was issued according to the prayer of said bill and served upon the defendant, bond being filed, &c. Afterwards, affidavit having been made by one Thos. K. Leonard, a party interested collaterally in the proceedings, that Edwards, in disobedience of the order of injunction, had removed a portion of the cotton and was about to remove the balance, an attachment was issued by order of the court and Edwards taken into custody for contempt of court.. The defendant denied the contempt, setting up various matters in contradiction thereof. Upon a hearing of the matter, the examination of witnesses, argument, &c., the Judge decided that the contempt had been committed, and ordered Edwards committed to jail, without bail, until he should purge himself fully of the contempt, either by restoring the cotton, &c., removed, or paying the full value thereof into the registry of the court, a motion to dissolve the injunction being refused.

On the 4th February, 1867, Edwards filed his petition reiterating his innocence of the contempt, stating that he had already been confined to jail for a period longer than that authorized by the statute of the State of Florida, (see Thomp. Dig., p. 322,) asking that a writ of *habeas corpus* should issue in his behalf, and that he be discharged from custody. The prayer of this petition being refused by the Judge of the Circuit Court, a writ of error was sued out in this court.

Associate Justice Douglas having been of counsel in this case, his Honor, Thos. T. Long, Judge of the Suwannee Circuit, was called in and sat in his place.

8

*McQueen McIntosh* for plaintiff in error.

The court below erred in committing the prisoner, as the record will show, and this court will look at the whole record of proceedings to ascertain whether this be so.

The fact that the prisoner has been committed for a contempt will not prevent this tribunal from inquiring whether the proceedings had in reference to him were according to *law* and *practice,* or whether the term of his imprisonment exceeds that which is prescribed by law.

We insist that the proceedings were irregular; that the injunction was improvidently granted, and should have been dissolved on motion.

The injunction is erroneous in this: it is perpetual, while it should have been provisional. Only temporary injunctions are granted until the relative rights of the parties are ascertained. 9 How., 10.

The injunction is a decree. It undertakes to settle the rights of parties. It decrees specific performance when it is well known that a bill will not lie for the specific delivery of a chattel.

It is not in conformity with the order of the court, and for that reason should have been dissolved on motion.

These questions become important in connection with the motion to dissolve the injunction; for, if the defendant is guilty of a breach, without willful, manifest intent, the court will only commit if he fails to show that the injunction is erroneous, or that the complainant has no equity. Dan'ls Ch., 1782, note 3; *ib.* 1786, note 5; Sullivan vs. Judah, 4 Paige, 444; Partington vs. Booth, 3 Mer., 146; R. M. Charlton, 358.

It may be contended that the act of commitment was one of discretion, and no writ of error lies for reversal in such case. Discretion is to be controlled by law, and the Judge below was bound to determine according to law. It will

not answer to say that a presiding Judge may call a larceny or a libel a *contempt*, and punish accordingly.   Barber vs. the State of Florida, 5 Fla. Rep., p. 206, 207, 208, 209.

A rule of decision is as binding upon courts of equity in this State as the positive enactments of a statute.   Thomp. Dig., 459.

There is no equity in the bill.   It cannot be a bill for specific delivery of chattels, for none such lies except for heir-looms, valuable pictures, rare and costly statuary, and, by late decisions, for slaves.

The complainants had no place in the Court of Chancery, are not entitled to specific performance, and were not in a position to impeach the sale upon the ground of fraud.

Their remedy at law was full, complete and adequate. They were simple contract creditors; and assumpsit lies to compel principal to refund to surety or against co-surety to contribute.   Carrell vs. Bowie, 7 Gill, 41; Kilpatrick vs. Tunstall, 5 J. J. Mar. 80; Burge on Surety, 387.

The complainants have no lien; are entitled to no preference over other simple contract creditors.

If then they were simple contract creditors, they were no more entitled to this injunction than any endorser upon a promissory note against a maker.

Would a bill lie by the obligee against a principal in the bond?   Clearly not.   And if not, can the surety occupy any other or better position?   The obligation is payable to *Leonard*.   Would a bill be entertained on the part of Leonard against Edwards?   The subject matter of indebtedness is the same.   An action at law lies for a recovery in either case. An attachment is the remedy against a fraudulent debtor.

The farthest that the Courts of Equity have ever gone has been to compel a dilatory payee to proceed against the principal; even this is a doubtful jurisdiction, for in some States it is given by statute, as in Virginia.   But even then, never unless the debt is due.   1 Story's Eq., 327, 849.

Before the surety can proceed against the principal, *he must have a lien.*   This can only be created by a payment or judgment.

We insist farther, that these complainants are forever estopped from declaring themselves to be sureties.   At law, the obligation would be an " estoppel *en pais*," for all are principals.   Equity will not vary the rule, unless the complainants allege and show that in the execution of the obligation there was misapprehension, mistake, misrepresentation or fraud.   It is not so alleged, and the court below should not have presumed it.

If, however, the complainants are to be deemed sureties, they voluntarily took the hazards, and they must pay the debt before they can have relief in a court of equity.

There was no breach committed.   Edwards had the right to sell.   Baum had the right to purchase and attach any conditions to that purchase.   The right of storage was such condition.   There was delivery, and the right of removal follows of course.

The property did not remain in the vendor, for the sale was consummated, and nothing remained to be done.   Edwards was not even a bailee.   Baum is neither a party to the bill or injunction.   The imprisonment of Edwards is the vicarious punishment of Baum.

A court of equity will not grant an injunction upon a bill filed for the reformation of an instrument, because the equities which would entitle the complainants to relief would have no existence until a decree had determined the rights of the parties.   1 Story's Eq., 161 ; 9 How. 10.

The English practice has been invariably to deny a decree for relief under the same bill which prayed for a reformation. The Court of Chancery here is bound to follow the English practice.   Thomp. Dig., 459.

The bill in this case being filed, the court below, in one act, (viz:) in granting and issuing the injunction, reforms

the instrument, grants the injunction and makes a final decree before ever the defendant had an opportunity of answering the bill or submitting his proofs.

The common law Judge, before whom the petitioner filed his application for the writ of *habeas corpus*, sits without his knowledge of what occurred as Chancellor.

The petition does show probable cause, and he should have granted the writ.

The statute entitled the prisoner to a discharge after imprisonment for thirty days. Duval's Compilation, p. 89, 90.

The case of *ex parte* Kearney, 7 Wheaton, 385 4; Con. R. U. S., p. 225, and that of the Lord Mayor of London, 3 Wilson, 190, had been the rule of decision in like cases; but our statute expressly intended to change and modify the effect of that rule of decision by providing that, upon writ of error, the appellate tribunal shall reverse or affirm the judgment, thereby giving to the appellate tribunal the power to examine all the facts, and to do in the premises what to justice may pertain, and *ex parte* the Lord Mayor of London was not an application for the statutory writ. Thomp. Dig., p. 529, 530; Allard vs. Smith, 2 Excheq., 480; Johnson vs. Commonwealth, 1 Bibb's R. 598, has no application; Const. Art. 5, Sec. 2; 2 J. J. Marshal, 572; 2 Law Reg., 54.

In conclusion, we say that this proceeding is utterly inconsistent with every rule of practice hitherto known. The bill is a bill *qua timet*. It is a bill for the reformation of a contract. It is a bill for specific performance and for the delivery of chattels; and the court erred in entertaining it.

Farther, the court, by its proceedings, indicated a policy wholly at variance with all the legislation of this State. The whole proceeding, in its legal effect, is nothing more than a bail process, or an attachment of the person to satisfy an ordinary debt.

The powers of the Court of Chancery have never been successfully invoked for such a purpose.

The very reason that the writ of error lies is because one subordinate court cannot interfere with the commitments of another.   9 John., 394.

*James D. Westcott, Jr.*, on the same side.

*M. D. Papy* and *A. J. Peeler* for contestants.

A writ of error does not lie in the case at bar because—

1st. The record does not show that a writ of *habeas corpus* was issued by the Judge below, or that the prisoner was brought before the court and the cause of his imprisonment inquired into, nor does it show that such a trial was had or such a judgment was rendered as required by the statute to authorize the granting of the writ by the Supreme Court.

2d. The record does not show that any exceptions were taken to the rulings of the court below, nor does it disclose any bill of exceptions.

3d. This cause is brought up on the refusal of the Judge below to grant the writ of *habeas corpus*. This furnishes no ground for a writ of error, for it is not made the duty of the Judge below to grant the writ unless "probable cause is shown by affidavit or evidence to believe that the party is detained in custody without lawful authority." Thompson's Dig., 527.

The presumption in this case would be that the learned Judge below, upon considering the affidavit of Edwards, did not believe that he was detained in custody without lawful authority.

The statute, after providing for the issue, service and return of the writ and the proceedings thereon, process to compel the attendance of witnesses, the record, the judgment, the mode of entering or recording the judgment, its effect, &c., says, Sec. 3, Thomp. Dig., 529 : " If any party to *such judgment* rendered by a Judge of the Circuit Court in vacation, or the said court in term time, shall feel himself

Ex Parte A. K. Edwards—Argument of Counsel.

aggrieved thereby, it shall be lawful for the Supreme Court, having jurisdiction, on his motion to grant a writ of error, and upon the trial to reverse or affirm the judgment, wholly or in part, and to cause such other judgment to be entered, and such proceedings to be had as the law and the right of the case may require, either awarding costs or not, at their discretion."

The 2d Sec., 528, provides, "that the Court or Judge (below,) before whom the prisoner shall be brought, shall, without delay, proceed to inquire into the cause of his imprisonment, and shall either discharge him, admit him to bail, or remand him to custody, as the law and the evidence shall require, &c.

The judgment, then, of the court below must either be to *discharge the prisoner, admit him to bail*, or remand him to custody, and this must be " as the *law and the evidence shall require.*" Can it be said that either of these judgments has been rendered in this cause, and how could either of said judgments be rendered " *as the law and the evidence shall require,*" when there was no trial, no questions of law, and no evidence ?

A judgment is defined to be the decision or sentence of the court upon what has previously passed; the matter of law and of fact being fully weighed and adjusted. 3 Blk., 387. According to this definition, not only has there been no judgment, but there has been no trial. There is, therefore, nothing in this record for the Supreme Court to reverse or affirm, and the very office of a writ of error is to reverse and correct errors of law committed in the proceedings. Bac. Ab., Errors, Tidd's, Pr. 43.

4th. But if the court shall be of opinion that a writ of error will lie upon the *mere refusal* of the Judge below to grant a writ of *habeas corpus*, to what are we to look to discover the grounds upon which the writ was asked and the grounds of refusal ?

The affidavit of Edwards shows that he is committed for a contempt for violating an injunction and restraining order of the Chancellor of the Middle Circuit, and that it is from this he is seeking to be discharged. Edwards admits in his affidavit that it was after a full hearing of the motion to dissolve the injunction, and to commit by the court, that he was committed to the common jail of the county, and the question before this court, as it was before the Judge below, is restricted to a consideration of the lawfulness of the authority by which he is confined, and does not present the merits of the Chancery cause, out of which his imprisonment grew.

We contend, 1st, That a writ of error does not lie when a court of competent jurisdiction, in the exercise of its legitimate authority, has made a commitment for contempt.

2d. That, in such case, neither the court below nor the court above will inquire into the cause of commitment by writ of *habeas corpus*. *Ex parte* Kearney, 7 Wheaton 38; 5 U. S. Con. Rep.; Brass Crosby, Lord Mayor of London, 3 Wilson, 188; Yates' case, 9 Johnson, 395; Samuel Jordan vs. the State, 14 Texas, 436; 13 Maryland, 632; 15 B. Munroe, 607; *ex parte* Alexander, 2 Law Reg., 44; 1 Blackford, 166; 1 Breese, 266; 2 Bayley, 18; 1 J. J. Marshall; 1 Bibb, 598.

Justice Story, who pronounced the opinion in the case of *ex parte* Kearney, made two points—

1st. That the Supreme Court of the U. S. had no appellate jurisdiction in criminal cases.

2d. The court will not grant a *habeas corpus* where a party has been committed for a contempt by a court of competent jurisdiction.

In the case of Yates, 9 Johnson, the whole doctrine of commitments of contempt was discussed, and it was settled that " the Supreme Court cannot discharge on *habeas corpus*

Ex Parte A. K. Edwards—Opinion of Court.

a person committed by a Court of Chancery for a contempt of that court."

In the case in 14 Texas, it was decided "that a writ of *habeas corpus* did not lie to revise the action of a court of competent jurisdiction in cases of commitment for contempt." It may be urged against this authority "that cases of contempt of court are excepted from the general statute of appeals in criminal cases;" but the answer to this is that the exception was but declaratory of the common law. In the case cited from 2d Law Reg., 49, the court say that this was the common law. In the case cited in Bibb, the Supreme Court of Kentucky say, (page 599,) "error to cases like the present is not specially permitted nor prohibited by our statutes, therefore, in determining whether this writ lies, we must be governed by the general principles," and the court unanimously decide that the writ of error does not lie in such case, and the Supreme Court will not inquire into a case of commitment for contempt. The court say, page 603, that the Circuit Court below exercises its power of commitment "free and independent" of *this* court. The same doctrine is held in the Virginia case cited.

The farthest that any of the courts have gone has been to declare, that though a writ of error may lie in a case of contempt, yet if the court below had not clearly transcended its powers under the law, the court above would make no inquiry into the cause of commitment.

DuPONT, C. J., delivered the opinion of the Court.

This case arose from the refusal of a Judge of the Circuit Court to award a writ of *habeas corpus*, and is brought to this court by writ of error, under the provisions of the statute, which is in these words: "If any party to such judgment rendered by a Judge of the Circuit Court in vacation, or the said court in term time, shall feel himself aggreived

thereby, it shall be lawful for the Supreme Court having jurisdiction on his motion, to grant a writ of error, and upon the trial, to reverse or affirm the judgment wholly or in part, and to cause such other judgment to be entered, and such other proceedings to be had, as the law and the right of the case may require, either awarding costs or not, at their discretion."

At the hearing before us, a motion was made by the counsel for the contestants, to dismiss the case, upon the ground that no "judgment" had been rendered by the Judge of the Circuit Court, to whom the application for the writ of *habeas corpus* had been made, upon which a writ of error would lie. In support of the motion, it was insisted that a *refusal* to grant the writ was not such a "judgment" as was contemplated by the statute. We think otherwise, and it is only necessary to recite the order entered in this case, to show that it contains all the elements of a judicial "judgment." It is in these words: " On this day, the petition of A. K. Edwards, asking that ' a writ of *habeas corpus* ' might be granted to him, and he discharged from further custody, was presented and considered: Whereupon the court doth *adjudge* and order that the prayer of said petition be refused," &c.

Having arrived at the conclusion that the writ of error does lie, we proceed now to the investigation of the case, to ascertain whether or not an error was committed in the refusal to grant the writ of *habeas corpus*. In making this investigation, we concur in the position held by the counsel for the contestants—that the court must be confined to the petition asking for the issuance of the writ, and that it is not permissible in this proceeding to investigate the merits of the cause out of which the commitment arose. The statute (vide Thomp. Dig., pp. 527–'8,) is very peremptory in its terms as to the duty of the Judge to whom the application may be made for the award of the writ. It is in

these terms: "Whenever any person detained in custody, whether charged with a crminal offence or not, shall, by himself or by some other person in his behalf, apply to the Circuit Courts in this State, or to any Judge thereof in vacation, for a writ of *habeas corpus*, and show by affidavit or evidence, probable cause to believe that he is detained in custody without legal authority, it shall be the duty of the Court or Judge to whom such application shall be made, forthwith to grant the writ, signed by himself, directed to the person in whose custody the applicant is detained, and returnable immediately before such Court or Judge, or any of the said Courts or Judges." The terms of this statute are peremptory upon the Judge to whom the application may be made, to grant the writ in all cases where it shall be shown by the affidavit or evidence that "probable cause" exists for believing that the applicant may be detained in custody without legal authority. It is to be presumed that the Judge below did his duty in this particular—that he did look into the affidavit to ascertain whether there was such "probable case" therein set forth as would warrant him in granting the prayer of the petitioner, and finding none, he *refused* to award the writ. It was upon this judgment of refusal that the petitioner founded his writ of error, and brings the case before the Supreme Court for its supervision, and we are now called upon to do what the Judge below did, viz: to look into the petition or affidavit to see if there is therein set forth such "probable cause" as ought to have entitled him to the award of the writ of *habeas corpus*.

The petition or affidavit shows upon its face that the petitioner is deprived of his liberty, by an order of the Chancellor, for an alleged contempt of the authority of the court of Chancery, and but for the statutory provisions in this State upon the matter of "contempts," this isolated showing would be sufficient ground for the dismissal of this writ of error; for it is not to be denied, (and the numerous authori-

ties cited at the hearing by the counsel for the contestants abundantly establishes the position,) that, in the absence of any statutory limitations or restrictions, the power of the several courts over "contempts" is omnipotent, and its exercise is not to be enquired into by any other tribunal. This is the great bulwark established by the common law for the protection of courts of justice, and for the maintainance of their dignity, authority and efficiency, and neither in England nor in the United States has this unrestricted power been seriously questioned.

The genius of our people, however, ever sensitively jealous of restraints upon the personal liberty of the citizen, has caused them, through the action of the legislative department, to limit and restrict this common law power of the courts. The act of the Legislature here referred to gives to the courts the power " to punish for contempts, by fine or imprisonment, and not otherwise," but expressly provides that "the fine in any case not to exceed one hundred dollars, or the imprisonment thirty days."

Now if this statute be applicable to Courts of Chancery as to courts of law, and from the very terms used in the act, (passing " orders and decrees," being mentioned among the powers accorded to the courts referred to,) there can be no doubt of it, it becomes absolutely necessary that an interpretation be given to it, which, while it shall guard the personal liberty of the citizen, shall not operate to deprive this great dispenser of equity of its appropriate power and authority to enforce its orders and decrees. This can be done only by distinguishing between that class of contempts which are merely *punitive* in their character, and such as afford the means of enforcing the orders and decrees of the Court of Chancery. Of the former class are such as imply an indignity or some exhibition of disrespect to the officer, such as indecorous conduct in his presence, or the violation of a *restraining* order of the Chancellor, passed before the

Ex Parte A. K. Edwards—Opinion of Court.

final hearing of the cause. Such acts, which are merely the subjects of *punishment*, are doubtless the only ones to which the restriction and limitation of the statute was designed to apply. It never could have been the design or intention of the Legislature to deprive the Court of Chancery of the only means which it possesses to enforce *affirmatively* its orders and decrees, or to enforce *any decree*, whether affirmative or otherwise, which may be passed upon the final hearing of the cause. We do not find this distinction in the books, nor was there any necessity for it, as the law anciently stood. It arises entirely from the enactment of our statute limiting the power of the courts to punish for contempts.

But, reverting to the petition, we think that there does appear upon the face of the petition such probable cause as entitled the petitioner to the issuance of the writ. The affidavit shows that the petitioner was imprisoned for the violation of the restraining order of the court, in removing certain cotton from the plantation, and had this been all, we are very clear in the opinion that, for that offence, the punishment of the party could not have extended beyond the limitation mentioned in the statute. But the petition also shows that the petitioner was ordered to restore the cotton to the plantation, or to pay its value into the registry of the court. Such an order *implies* that the cause had come to a final hearing, and that this was the final decree in the case, and imprisonment was certainly one of the means to enforce the decree, and would not be affected by the restriction contained in the statute. Now it was the right of this party to have his case investigated, in order that he might show, if he could, that there had been no such final decree in the cause.

The fact that the application for the writ was made to the Judge, who, as Chancellor, had ordered the commitment, can have no legal bearing in this investigation. The application could as well have been made to some other Judge,

and, as we have done, he would have confined himself, upon the application for the writ, to the matters set forth in the petition. After the writ had been granted, he might then, as a matter of evidence, been permitted to use the record in the original suit.

With these views, we are constrained to reverse the judgment of the Circuit Judge, and to remand the cause for such further proceedings as shall be conformable to the views set forth in this opinion.

In this cause a petition for a rehearing was filed by the counsel for the contestants, but has not been acted upon by the court.

Hon. T. T. LONG, delivered the following dissenting opinion:

This cause comes up on the ground that the Judge below refused to grant the writ of *habeas corpus*. The record before this court does not show that the writ of *habeas corpus* was issued by the Judge below, or that the prisoner was even legally before the court, and the cause of his imprisonment inquired into; nor that any exceptions even were taken to the ruling of the court below; nor are any exceptions disclosed by the proceedings below.

It is before this court merely upon the refusal of the Judge below to grant the writ of *habeas corpus*. No grounds are furnished for the writ of error by the proceedings below. Nor is it made the duty of the Judge below to grant the writ, unless probable cause is shown in terms prescribed by the statute. Thompson's Dig., 5th chap., 1st sec. Before the writ can issue, it must be shown to the court "by affidavit or evidence probable cause to believe that he is detained in custody without lawful authority." What is probable cause, is a question to be decided by the court before whom the party appears for his relief, and that court must determine upon it without a knowledge of what that evidence was. It will

be presumed that the court below acted upon the affidavit, and that the affidavit did not disclose sufficient reason for his discharge, or that he was not in custody without lawful authority.

The judgment of the court below must be either to discharge the prisoner, admit him to bail, or remand him to custody; and this must be " as the law and the evidence shall require." Neither of these judgments have been rendered by the court below in terms of the statute.

There could be no judgment of the court below, as no matters of law or facts had been adjudicated, as appears from the record.

The law and the facts must have been fully weighed and adjusted, (3 Black, 387,) before it can become the judgment of the Court.

The office of a writ of error is to correct some error committed in the proceedings, and the proceedings must be full and complete before the cause could be heard by an appellate tribunal. Bacon's Abridgement, Tidd's Pr. 43.

A majority of the court being of the opinion that the writ does lie in this cause, we now come to the consideration of the grounds for which the writ was asked, and its refusal by the court below.

The affidavit of Edwards shows that he is committed for a contempt for violating an injunction and restraining order of the Chancellor of the Middle Circuit, and it is from this that he is seeking to be discharged. Edwards admits in his affidavit that it was after full hearing of the motion to dissolve the injunction and to commit by the court, that he was committed to the common jail of the county. The question before this court, as it was in the court below, is restricted to the lawfulness of the authority by which he is confined. The merits of the chancery cause out of which his imprisonment grew cannot be inquired into.

A writ of error cannot lie when a court of competent

jurisdiction, in the exercise of its legitimate authority, has made a commitment for contempt. In such a case, neither the court below nor the appellate court will inquire into the cause of commitment by writ of *habeas corpus*. *Ex parte* Kearney, 7th Wheaton, 38, 5th U. S. Con'd Rep.; Lord Mayor of London, 3d Wilson, 188; Yate's case, 9th Johnson, 395; 14th Texas, 436; 13th Maryland, 632; 15th B. Monroe, 607; *ex parte* Alexander, 2d Law Register, 44; 1st Blackford, 166; 1st Briese, 266; 21st Bagley, 18; J. J. Marshal, 1st Bibb, 598.

In the case of *ex parte* Kearney, the Judge who pronounced the opinion, said: "That the court will not grant a *habeas corpus* where a party has been committed for a contempt by a court of competent jurisdiction." In the case of Yates, 9th Johnson, the whole doctrine of commitment for contempt was fully and ably discussed, and it was settled that the Supreme Court cannot discharge on *habeas corpus* a person committed by a court of chancery for a contempt of that court.

In the case 14th Texas, it was held that a writ of *habeas corpus* did not lie to reverse the action of a court of competent jurisdiction in case for commitment for contempt.

In the case cited in Bibb, the Supreme Court of Kentucky say: Error to cases like the present is not specially permitted nor prohibited by our statutes; therefore, in determining whether this writ lies, we must be governed by the general principles; and the court unanimously decide that the writ of error does not lie in such cases, and the Supreme Court will not inquire into a case of commitment for contempt. He further says on page 603, that the Circuit Court below exercises its power of commitment free and independent of this court. This decision is fully sustained by the Virginia case cited.

The statute, Thompson's Digest, pages 321, §2, provides that the Superior Courts shall severally have jurisdiction to

Ex Parte A. K. Edwards—Dissenting Opinion.

administer oaths, make rules, pass orders and decrees, and give such judgments as may be necessary to support their authority: to punish for contempt by fine or imprisonment, and not otherwise—the fine not to exceed in any case one hundred dollars, or the imprisonment thirty days; and shall exercise all the necessary powers appertaining to their jurisdiction respectively, according to law.

Sec. 1st, page 322, provides that a refusal to obey any legal order, or mandate, or decree, made or given by any Judge of the Superior or County Court, either in term time or vacation, relative to any of the business of said court, after due notice thereof, shall be considered a contempt and punished accordingly, &c.

It must be evident that the punishment prescribed on page 321 refers to the matters declared to be a contempt on page 322, and does not refer to those orders or judgments as may be necessary to support the authority of the court. In this case, the order is to re-produce the cotton taken away in violation of the injunction, or pay its value into the registry of the court, and, in order to support the authority of the court, the order further directs, that Edwards be committed until he performs what is required. The order is not punitive. The commitment is not ordered as a punishment for a contempt in the sense intended by the law on page 322, but is a judgment intended to support the authority of the court in respect to the mandate contained in the injunction, otherwise a court would be powerless to execute its decrees which require any act to be done or not to be done by a party before it. For example: a decree for the specific execution of a contract for the delivery of a deed or other papers, and the like. No just distinction exists between an interlocutory and final decree, because, in many cases the execution of the interlocutory order is essential to the final decree; and if the court cannot support its authority by

10

compelling the performance of the interlocutory order in the form adopted here, then the final decree will be useless, and will result in nothing, because the thing to be acted on has been placed beyond the jurisdiction and power of the court. We may admit in this case, without prejudice to the action of the court, that no punitive order punishing for a contempt can exceed one hundred dollars, in case of fine, or thirty days, in case of imprisonment. But that does not affect the question here, for here the order is not punitive, and the party need not have gone to jail at all, or need not have remained there; a simple compliance would have satisfied the order at any moment; and it was for Edwards to say, by his own act, whether he should be imprisoned at all, or how long he should remain confined.

A due consideration of the law, therefore, will, it is believed, satisfy us that the provision of the statute on page 331 does not apply to this case, and that the decision of the court below should have been confirmed.