## Ex Parte Reuben M. Ellerd.

### No. 2065. Decided June 27, 1913.

**1.—Contempt—Power of District Court—Custody of Children—Divorce.**

A District Court of this State, in a divorce suit, has the power and authority to make the proper order as to the custody and care of the children, where they should be kept and that they shall not be taken out of the jurisdiction of the court and to fine the parties for contempt for disobedience of said order. Following Ex Parte Reeves, 100 Texas, 617, and other cases.

**2.—Same—Certainty of Judgment—Divorce—Children.**

Where, in a divorce suit, the District Court entered an order that the parties to the suit upon proper notice had the right to visit their children, who were placed in the custody of the mother of defendant, and that they should not be removed out of the jurisdiction of the court without the consent of the court or the agreement of the parties, the same was sufficiently certain to be enforced by contempt proceedings.

**3.—Same—Judgment—Presumption—Collateral Attack—Proof.**

Where the District Court made certain orders in a divorce suit as to the custody of the children of the parties, and upon plaintiff's motion complaining of defendant's violation of said order heard evidence and fined defendant for contempt for violation of said order, this court, in the absence of the evidence introduced on said motion, will presume on a collateral attack that the same was sufficient to authorize the court to enter a judgment of contempt; besides, the testimony of the relator before this court would have authorized the court below to have entered said judgment of contempt. Davidson, Presiding Judge, dissenting.

**4.—Same—Contempt—Excessive Fine.**

While it is clear that the District Court could not have entered a fine for contempt against relator exceeding $100, under article 1708, Revised Civil

Statutes, and that a fine of $250 was excessive, yet where it appeared in this court on habeas corpus that relator had not paid any part of said fine or the costs of the court, the fine be reduced to $100, and the relator remanded to custody until he pays same and costs. Distinguishing Ex Parte Morgan, 48 Texas Crim. Rep., 108. Davidson, Presiding Judge, dissenting.

**5.—Same—Rule Stated—Excessive Fines—Contempt—Voidable.**

In the case of a judgment or sentence which is merely excessive, this court being one of general jurisdiction, need not discharge relator until he has suffered or performed so much of the judgment or sentence as it was within the power of the lower court to impose, and the same is not void ab initio. Davidson, Presiding Judge, dissenting.

From Hale County.

Original writ of habeas corpus asking release under a writ of commitment for contempt from the District Court, for $250.

The opinion states the case.

*Carrigan & Householder*, for relator.

*C. E. Lane*, Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—This is a writ of habeas corpus from a judgment of the District Court of Hale County, fining the applicant for contempt. The writ was granted in vacation by one of the judges of this court largely because the fine for contempt was for $250.

The record shows that prior to April 23, 1909, the applicant, Ellerd, sued his wife, Ruth, for divorce in the District Court of Hale County, Texas, also setting up therein that there were two children by the marriage, a boy then five years of age, and a girl, then about three years old, and that his mother, Mrs. Lucinda Ellerd, was a proper person to care for said children, praying for a divorce and that the care and custody of said children be given to his mother; that on said date he was granted a divorce, and certain property was partitioned between them. As to the children, the judgment of the court in the divorce suit in response to appellant's allegations and prayer, is as follows:

"It further appearing to the court that the parties hereto have in open court agreed, and it is therefore ordered and decreed by the court that the two minor children of plaintiff and defendant, towit, Truman Ellerd, a boy of about five years of age, and Nina Belle Ellerd, a girl of about three years of age, be and is placed and decreed in the custody of Mrs. Lucinda Ellerd of Hale County, Texas, who shall not later than the 1st of September, 1909, bring said children to the town of Plainview, in said county, and keep them in Hale County as their permanent place of residence, and that the defendant shall have the right to visit said children and administer to their needs at all reasonable and seasonable times, five days prior notice of such visits having been first given to Mrs. Lucinda Ellerd, without any hindrance whatever, and neither the plaintiff nor the defendant shall have the right to remove said children or either of them out of the jurisdiction of this court without the consent of the court or the agreement of the parties."

This judgment was in full force and effect when this contempt proceeding was begun; about August 9, 1912, said divorced wife of applicant, Ruth Ellerd, filed her motion in the said District Court of Hale County, setting up the said divorce judgment and the disposition of the children as shown by that portion of the order copied above, and that on or about May 26, 1912, she not having seen her children for many months, wrote them a letter from her home in Newcastle, Young County, Texas, addressing it in the care of Mrs. Lucinda Ellerd, notifying her, said Mrs. Ellerd, that she would soon visit her children at Plainview, in Hale County; that on June 1, 1912, she left her home and went to Plainview for the purpose of visiting her children, arriving there on June 2, 1912, and went to where Mrs. Lucinda Ellerd had been residing with her children, but found they were not there but that her former husband, the applicant herein, had had his father and mother, after receiving said notice of her intended visit, take her children from Plainview to the town of Texico, New Mexico, and had placed them then on the train and sent them to Cloud Croft, New Mexico, both of said places being beyond the jurisdiction of the court and in a foreign State; that her said former husband, knowing her visit at Plainview and the purpose of it, had failed and refused to cause her children to be returned to Plainview as he could have done; that his father and mother were old and infirm, subject to his control and entirely subservient to his wishes with respect to the custody, control and management of her children and their control and custody being in substance and effect his control and custody, and that in violation of said divorce decree in the particulars above quoted, had procured and caused them to remain away from Plainview beyond the jurisdiction of the court for more than sixty-seven days at that time, while she waited in vain for the opportunity to visit them in Plainview as she was entitled to do under the terms of said decree and that by his action he was guilty of violating the terms of said decree and in contempt of the authority of said court.

There was much else in this motion of prior violations by her former husband of said decree and that he had many times been in contempt of the court in violation thereof, but it is unnecessary to state any of these matters as they were not the basis of the court's order in said contempt proceedings.

The record further shows due service upon the applicant and that he appeared with his attorney and duly answered her motion against him; that the court fully heard all of this matter between them, heard all the evidence and thereupon, and on June 26, 1912, made and entered in the minutes of said District Court an order to the following effect:

"It is ordered, adjudged and decreed that the defendants, Reuben M. Ellerd, Mrs. Lucinda Ellerd and her husband, T. J. Ellerd, and each of them be and they are hereby required to produce before the District Court of Hale County, Texas, on the first day of the next ensuing term thereof, towit, the 5th day of August, 1912, at 10 o'clock a. m., the two said minor children, Truman Ellerd and Nina Belle Ellerd, mentioned

in plaintiff's petition and them to have in said court from day to day and term to term until otherwise ordered by the court, and to observe and to perform such further order of the court as it may make from time to time with respect to said children and the custody thereof; and it is further ordered that the clerk of this court do issue notice of this order to said defendants." That the clerk thereupon issued the proper writ with a copy of this last order therein, which was duly served upon the applicant.

That in obedience to said order and notice the applicant did appear and answered the said motion, contesting the same in many particulars. Thereupon, the court again heard the parties, all the evidence introduced thereon and argument of counsel, and on August 10, 1912, entered a decree stating that the court was of the opinion that said Reuben M. Ellerd, applicant, was guilty of contempt of the court in disobedience of said order of said court rendered and entered on April 23, 1909, and thereupon adjudged him guilty of contempt of the court as charged by the plaintiff in her said motion and fined him $250, and "It is therefore ordered, adjudged and decreed by the court that the State of Texas do have and recover of the defendant, Reuben M. Ellerd, the said fine of $250 and all costs of this prosecution, and the said defendant, being present in court, is placed in the custody of the sheriff, who will forthwith commit him to jail until such fine and costs are paid, and said defendant, Reuben M. Ellerd, is now in the custody of said sheriff and execution may issue against the property of the defendant for the amount of such fine and costs."

Thereupon, the proper writ of commitment was issued to the sheriff of said county in accordance with said decree. The sheriff took charge of him in obedience thereto and was holding him in custody when he, on August 14, 1912, sued out the writ of habeas corpus herein.

The record herein does not show this court what testimony was introduced in the District Court on the hearing and at the time the court made and entered the order fining the applicant for contempt. No appeal was taken from the said order fining him for contempt, if that could be done. By his brief and the oral argument of his attorneys he attacks the said judgment of contempt on four grounds: (1) That the District Court of Hale County had no jurisdiction to fine him in any sum for contempt for doing the things for which he was fined; (2) that the said judgment of contempt was void because the motion nowhere states that his children were taken out of Plainview without the consent "of the parties," claiming that the original decree herein first above recited was indefinite and uncertain and does not inform him or anyone whose consent must be obtained in order to remove said children from Plainview; (3) that the said first order above recited was no such order or decree as would hold him in contempt for sending his mother and the children out of the State and the jurisdiction of the court for sixty-seven days; that this would be in effect an injunction when, as a matter of fact, it is a mere declaration of the rights of his father and mother in reference

to said children and gave them the right to exercise such control over them as mentioned therein and that Mrs. Ruth Ellerd, in effect, should have gone into a court of proper jurisdiction and sued out a writ of habeas corpus, or other process, and (4) that the District Court had no authority to fine him exceeding $100, and that the judgment fining him $250 was void.

It will not be necessary to discuss the said three grounds, first set up, separately, but instead we will discuss them together. It is too well settled in this State to require any discussion to show that a District Court of this State had the power and authority to make the order as to the custody and care of the children and where they should be kept and that they should not be taken out of the jurisdiction of that court. The statute of this State, Revised Statutes, article 4641 (2987), expressly gave the District Court power to give the custody and education of the children to either the father or the mother as to the court shall seem right and proper. The Constitution of our State, also, section 5, article 8, as has been expressly held by our Supreme Court, gives to the District Court original jurisdiction and general control over minors. In Ex parte Reeves, 100 Texas, 617, our Supreme Court expressly so held and in addition quoted and approved, on this point, section 1307, 3 Pomeroy's Equity (3 ed.), as follows: "In addition to its power to appoint guardians, the court of equity will also exercise its jurisdiction, in a proper case, and to promote the highest welfare of the infant, where there is already a guardian, natural or legal, by controlling the person of the infant, and by removing it personally from the custody of its natural or legal guardian, even from the custody of its own parents." And our Supreme Court has many times held that our District Courts had the right and power, and it is universally practiced by the District Courts, to take the custody of the minor children from both parents and put them into the custody of another. Rice v. Rice, 21 Texas, 58. See also Jordan v. Jordan, 23 S. W. Rep., 531; Legate v. Legate, 87 Texas, 248, and authorities therein cited; Church on Habeas Corpus (2 ed.), sec. 430; Hurd on Habeas Corpus, p. 462; 2 Bish. on Mar. & Div. (6th ed.), secs. 528d, 536; Schouler on Dom. Rel., secs. 248-9. And that the District Court has the right by its order, as was done in this case, to permit either parent to have access to his child at reasonable times and in a reasonable manner, there can be no question. Church on Habeas Corpus (2 ed.), secs. 433 and 437c. And we think there is no question but that in this State the court can restrict the person in whose charge he places the child from removing it out of the jurisdiction of the court. Hurd on Habeas Corpus, p. 52. Especially is this the case when such decree is made by the agreement of all the parties at the time the custody of the child is awarded, and directs that it shall not be removed from the jurisdiction of the court.

We can not agree with applicant's contention that there is any uncertainty about the decree of the court as to what parties are to have notice

of the visit of the mother to the children, wherein it says that "the defendant (Mrs. Ruth Ellerd) shall have the right to visit said children and administer to their needs at all reasonable and seasonable times, five days prior notice of such visits having been first given to Mrs. Lucinda Ellerd, without any hindrance whatever, and neither the plaintiff nor the defendant shall have the right to remove said children or either of them out of the jurisdiction of this court without the consent of the court or the agreement of the parties." Evidently the agreement of the parties and the decree of the court clearly embrace both the father and the mother.

As stated above, what the evidence was on the trial by the District Court when the fine for contempt was made and entered is not shown this court. The testimony before us when this habeas corpus trial was had did show that before said order of contempt was made and entered, the District Court heard all the evidence. On this collateral attack of said judgment we must presume and assume the evidence fully sustained Mrs. Ellerd's allegations in her motion, and that all said evidence fully authorized, if it did not require, a judgment of contempt.

Even if we take the testimony of the applicant, heard before us, it clearly would have authorized the District Court to have adjudged applicant guilty of contempt. It is shown from this testimony that at the time of the trial of said divorce case, when the decree placing said children in Mrs. Lucinda Ellerd's custody was made, that she then lived in Hale County, seventeen miles from Plainview, the county seat of Hale County, and that she then at that time had said children in her custody. That by said decree she was required not later than September 1, 1909, to even bring them from said distance already in Hale County to Plainview, and there keep them as their permanent place of residence. That said Mrs. Ellerd complied with this part of said decree, and removed from her then home with said children, and acquired another home at Plainview. All this was for a specific purpose, as we plainly understand from said decree, which was that their mother shall *there* "*have the right to visit said children* and administer to their needs at all reasonable and seasonable times, five days' prior notice of such visits having been first given to Mrs. L. Ellerd, *without any hindrance whatever,*" and not be required to go elsewhere to do so. The said testimony of the applicant before us unquestionably further shows that the mother of the children did give his mother this five days notice, and his mother not only so notified him but gave him said written notice and requested him to answer it, and he did so, by registered letter, telling her the children were going to be taken to Cloud Croft, N. M., and inviting her to visit them at Cloud Croft. Prior to the receipt of this notice from the children's mother, while his mother and father had discussed going somewhere on a trip for his health, no time nor place had been fixed upon. But immediately after he sent this registered letter, and he knew before it was possible for their mother to reach Plainview, he took his father and mother and the children some eighty miles across the country

in his automobile, and did not stop until he got them, not only out of Plainview and Hale County, but out of Texas. The presumption is strong that he did not take them on the railroad, fearing they might meet up with their mother. The testimony would also authorize the finding that his removal of them was permanent from Hale County, and that he is to keep them out of the jurisdiction of the court. In addition the testimony is clear that he took these children away, and out of Texas, at this particular time so as to prevent, as it did, their mother from seeing and visiting them at the time she had notified his mother she would, in clear violation of said decree.

As the District Court clearly had jurisdiction of the subject matter and of the person of the applicant before and at the time he heard Mrs. Ruth Ellerd's motion and entered the judgment of contempt against applicant, and as we are not advised what the testimony before the court was at that time, every indulgence will be presumed in favor of the regularity and authority of the order so made by the District Court at the time, when such judgment is collaterally attacked as it is in this habeas corpus proceeding.

The only other question necessary to be decided is whether or not the excessive fine entered against applicant renders the judgment absolutely void and subject to this collateral attack. It is clear that the District Court for contempt could not enter a fine exceeding $100. Revised Statutes, article 1708 (1101). There is no claim by the applicant that he has paid this fine or any part of it, or that he has paid the cost of the proceedings which was adjudged against him. So far as we have been able to find there is no case in this State directly passing upon this question. The applicant cites us to Ex parte Morgan, 48 Texas Crim. Rep., 108, 86 S. W. Rep., 755. The decision of that case does not directly decide this point and nothing is said thereabout other than the fact that in that case the relator was ordered discharged, be-·cause the fine for contempt therein was $300 and fifteen days confinement in the county jail, which was held to be for a past offense. A careful study of that case convinces us that the question was not raised, discussed, nor decided. So that we look to other authorities and principles for a correct decision of the question. In 15 A. & E. Ency. of Law (2 ed.), p. 171, the correct rule is laid down as follows:

"In the case of a judgment or sentence which is merely excessive, it seems to be well settled that, if the court was one of general jurisdiction, such judgment or sentence is not void ab initio because of the excess, but that it is good so far as the power of the court extends, and is invalid only as to the excess, and therefore that a person in custody under such a sentence can not be discharged on habeas corpus until he has suffered or performed so much at it as it was within the power of the court to impose. This condition exists whenever the punishment imposed is of the nature or kind prescribed by law and merely exceeds the quantity authorized, as where the offender is sentenced to a longer term of imprisonment than is prescribed for the particular offense, or

where he is condemned to pay a fine and be imprisoned for an offense which is punishable by fine or imprisonment; or where the sentence is severable, and a part of it is of the nature prescribed by law and the other part is not, as where an offender is sentenced to imprisonment in the penitentiary and to pay a fine, when the punishment authorized by law for the particular offense is a fine and imprisonment in the county jail." To support this, many cases are cited in the note, by the United States Supreme Court, and of the States of California, Massachusetts, Missouri, Nebraska, New York, North Carolina, Ohio, South Carolina, Vermont, West Virginia and Wisconsin. It is true that the text both before and following the quotation we have given above in substance states that there are authorities holding that an excessive sentence is invalid in toto and that a discharge on habeas corpus has been granted on that ground, but the cases in such sentences have been so declared on writs of error, or appeal. On this subject Church on Habeas Corpus (2 ed.), page 529, while recognizing that some courts hold such a judgment absolutely void, states: "The prevailing rule is that an excessive sentence is merely erroneous and voidable; that the whole sentence is not illegal and void because of the excess; that it is not void ab initio; and that it is good on habeas corpus so far as the power of the court extends, and invalid only as to the excess," citing many decisions to sustain this.

The rule above announced is so reasonable, just and right and is so well supported by authority that we, therefore, hold that the said judgment, although excessive to the amount and sum of $150, is not void and the applicant is not entitled to a discharge until, and unless he shows that he has paid the amount of $100 and all costs, and he is, therefore, remanded to the custody of the sheriff of Hale County.

        *Relator remanded to custody.*

DAVIDSON, Presiding Judge (dissenting).—While I do not think a fair statement of the facts would justify a contempt punishment if imposed within statutory authority, and that the majority opinion states more conclusions of the writer of that opinion than the facts as contained in the record would justify, I do not care to discuss that phase of the case particularly. I am clearly of the opinion this case on the facts does not present one in which a contempt punishment ought to have been inflicted.

The court fined applicant $250. The statute limits the authority of the district judge or court to the imposition of fine at not more than $100, and may impose as much as three days imprisonment in jail for contempt. As the court did not undertake to imprison in this case that phase of the statute will not be discussed, except as incidentally it may arise. My brother Prendergast concedes that the judgment is clearly erroneous and in direct violation of the statute. He further concedes that the limit of judicial authority is fixed by the statute at a fine of $100, and any amount of fine above the sum of $100 is clearly unauthor-

ized and can not be enforced in contempt proceedings. But applicant, however, is remanded by the majority opinion to custody until he pays the $100, upon the theory that the judgment is separable, and that by paying $100 he can then be released of the remaining $150. I do not understand such to be the law or such to be the authority vested in this court. There is no difference between my brethren and myself on the proposition that a fine of more than $100 can not be imposed. They agree with me that that is the limit so far as the amount of the fine is concerned. They decide, however, that this court can make the judgment of the trial court separable, selecting part of the $250 imposed as a fine and when that is paid the court under such showing would remit the remaining $150 on the theory that it was in excess of statutory authority. To that extent it would be vacating the judgment of the District Court and this court would in such case be entering a judgment that the trial court did not enter, and of which he alone had jurisdiction to enter. This court is not sitting as an original court so far as the contempt is concerned but only as a reviewing court under writ of habeas corpus in this instance of the action of that court. We, therefore, can not enter an original judgment in the case. I do not understand why my brethren should arbitrarily select the sum of $100, unless it be found in the fact that that was the extreme limit of the statute. If we have the power to remit a portion of it, or to make the judgment separable and put what we deem proper in it, why not place less than $100,—why not go to the lower amount of even $1? If this court has authority to change the judgment of the trial court, it would be absolute in that respect, and could substitute any amount it sees proper, and would in that event become absolute and autocratic. This court, as I understand it, has no authority whatever to impose any fine upon applicant. He was not in contempt of this court. If in contempt at all, he was in contempt of the trial court. That court or judge should impose a punishment only when he is authorized by law to do so and in the amount authorized by law. This court could not impose a punishment for contempt where that contempt was of another court. That judge fixed the punishment and did so in an amount that is admitted to be illegal. This court has fixed one supposed to be within the statute, but not fixed by the trial court, and not for contempt of this court, but contempt of another court. It would hardly be necessary to state this court is directly without authority to fix any amount of punishment for contempt of another court, or its proceedings. That is beyond the jurisdiction of this court, and my brethren so hold in their opinion, because they decide that the judgment was illegal and beyond the authority of the trial court. They have, therefore, assumed authority not conferred by the Constitution, by the statute, nor inherent in this court. The authority of this court in this case in this matter is merely and only revisory. If the judgment is violative of the statute or Constitution, this court can only discharge for the alleged violation if the judgment of the trial court is erroneous and void. Ex parte

Morgan, 48 Texas Crim. Rep., 108; Ex parte Kearby, 35 Texas Crim. Rep., 531; Ex parte Kearby, 35 Texas Crim. Rep., 634; Ex parte Tinsley, 37 Texas Crim. Rep., 517. In the Morgan case it was held that in assessing a fine at $300 the court was in error and the judgment void, placing the decision on the limitation set forth in the statute. So it was said in Ex parte Kearby, supra. In Kearby's case the opinion says: "Article 262, Revised Civil Statutes, authorizes courts to punish 'attorneys-at-law for misbehavior or contempt, by fine or imprisonment.' It is true there is no limitation in this article, but article 1101 limits the extent of the power of the district judge in this respect, and says, 'that he shall be authorized to punish persons guilty of contempt by fine not exceeding $100, and by imprisonment not exceeding three days.' This clearly applies to all persons, and creates a limitation upon the district court to punish anyone to a greater extent." There is not a decision in Texas that has been called to my attention which holds otherwise. This is the rule established by the statute and followed in all decisions in this State. The rule seems to be that where the statute or Constitution puts a limitation, that ends the power of the courts, and its authority. The rule is thus laid down in 9 Cyc., 58: "If the statute limits the duration of imprisonment or the amount of the fine, the punishment may conform to such limitation, but can not exceed it." Supporting this proposition the note cites Cole v. Egan, 52 Conn., 219; Ex parte Edwards, 11 Fla., 174; Swafford v. Berong, 84 Ga., 65; Cobb v. Black, 34 Ga., 162; Stewart v. State, 140 Ind., 7; In re Millington, 24 Kan., 214. Without further collating cases, the same rule is announced in Kentucky, Louisiana, Michigan, Montana, New York, North Carolina, Ohio, Tennessee, Texas, Utah, Washington, Wisconsin, England, and by the decisions of the Supreme Court of the United States. This is the rule in Texas by all the authorities. In re Graham, 138 U. S., 461, 11 Sup. Ct. Rep., 363, the rule was thus laid down: "The general rule that a judgment rendered by a court in a criminal case must conform strictly to the statute and that any variation from its provisions either in the character or the extent of punishment inflicted renders the judgment absolutely void." Se also Ex parte Krastendick, 93 U. S., 396; In re Mills, 135 U. S., 263; U. S. v. Pridgeon, 153 U. S., 48; Weens v. U. S., 217 U. S., 349. Again, the rule is clearly laid down that a judgment in criminal cases must conform strictly to the provisions of the statute prescribing punishment, and a variation therefrom will render the judgment void. See the same authorities already cited, and in addition, 15 Am. & Eng. Ency. of Law, p. 170, and notes. I also cite Nielsen, Petitioner, 131 U. S., 176; In re Johnson, 46 Fed. Rep., 477; Harmon v. U. S., 50 Red. Rep., 922; In re Christian, 82 Fed. Rep., 199; Ex parte Kelly, 65 Cal., 134; Ex parte Bulger, 60 Cal., 438; In re Bonner, 151 U. S., 242; In re Coy, 127 U. S., 731; Ex parte Rowland, 104 U. S., 604. Such is the rule in Texas as shown by the statutes and decisions in the history of the State. Ex parte Morgan, 48 Texas Crim. Rep., 108; Ex parte Kearby, 35 Texas Crim. Rep., 531; Ex parte

Kearby, 35 Texas Crim. Rep., 634, and cases previously cited. It is laid down in 15 Am. & Eng. Ency. of Law, p. 170: "That even where a court has jurisdiction of the offense charged and of the person of the accused, it may so far transcend its powers in assessing penalty for the offense by imposing a punishment of a character different from that prescribed by law or otherwise, that the sentence will be void and furnish no authority for holding the accused in custody, though the conviction on which the sentence was entered was valid and correct, and in such case the accused may be discharged on habeas corpus." This cites many of the cases already quoted and cited. And it has been held that an excessive judgment is one that the court did not have power to render and is therefore void. · Ex Parte Kearby, supra; Ex parte Morgan, supra, and other cases cited. These are cases decided by this court. See also Ex parte Cox, 32 Pac. Rep., 197. The case of Ex parte Degener, 30 Texas Crim. App., 566, has been followed by every decision announced by this court since its rendition, until this particular case made the exception. This court has also laid down the rule, after reviewing the authorities, and the old rule which had been in vogue theretofore, as follows: Jurisdiction is of two kinds: first, of the person; second, of the subject matter; and the further proposition announced, that where the court had jurisdiction of the person and of the subject matter, it must have the further power to render the particular judgment which was rendered on the facts and law of the case. That courts of general jurisdiction or superior courts have what is termed inherent power to punish for contempt, may be granted as a correct general proposition, but that power is subject to constitutional provisions and it seems as well the power of the Legislature to regulate such power. I do not care to enter into a discussion of that particular phase of the subject. This power may not be prohibited, but it may be regulated. In Texas the Legislature does regulate and ·prescribe the rule for the District Courts, and limits its power to fine for contempt to $100, and may in addition add imprisonment not to· exceed three days. It has also prescribed and regulated punishment with reference to county and justice courts. Therefore, the rule is the correct one in this State, that where the statute limits the duration of imprisonment or the amount of the fine, the punishment must conform to such limitation, "but can not exceed ·it." In the case in hand the trial court assessed a punishment of $250; the statute limits to $100. In the Morgan case, 48 Texas Crim. Rep., 108, the court imposed a fine of $300; the statute limited to $100. In the Kearby case the court imposed no fine, but placed him in jail until he apologized; the statute limited the punishment to $100 and three days in jail. In both instances this court discharged the contemner because the judgment was void. In the Kearby case, supra, the order was made without limitation as to the extent of the punishment, but confined itself practically to the will and pleasure of the court making it, dependent upon an apology on the part of the contemner.

These are some of the reasons why I can not agree with the opinion of my brethren. I am clearly of the opinion under the law and under the statute and our decisions, that applicant is entitled to his discharge. If the trial court desires to punish and has authority to do so, and a case arises where he deems it necessary to punish for contempt, he must conform that punishment to the statutory law of the State, and until that law has been changed it must govern the decisions of the courts. This court nor the trial courts would have authority to substitute their will or ideas of those matters for that of legislative enactment. This court is not clothed with authority to enter a judgment here against a party that was not entered in the court below; nor has it the authority to remit any of the punishment imposed by the trial court. If the trial court had the authority to punish for $250, then that part of his judgment would be legal. If he did not have that authority, then it would be beyond his jurisdiction to enter the order he did enter, and this court can not substitute any other order or judgment either directly or indirectly in the place of the judgment entered by the trial judge by a remission of a portion of the judgment so as to bring the trial judge's order within the statutory limit of $100. This court did not and can not enter the judgment nor impose the punishment. The trial court must do that. If he acted independent of the statute his judgment would be unauthorized, illegal and void for want of authority to enter such judgment, and having no authority to enter such judgment, it would be void. See cases already cited.

It will be noticed that the district judge was not exercising his authority to punish for contempt under and by virtue of the terms of the statute which limits the punishment as already indicated. This statute was ignored, and his action was based on a different proposition, and one entirely outside the statute. Had he been following this statute he would have limited the punishment not in excess of $100. He as judge either really knew what the statute was or is, or is supposed to have known its contents as well as the construction placed upon it not only by this court but the limit the Legislature had placed upon it. There is no other conclusion, as I understand the law, but that the judge acted outside and in excess of authority beyond the statute, and that his action in this matter was not based upon the statute, but was an assumed power clearly illegal and void.

Another distinction may be noticed. The punishment imposed by the trial judge was for disobedience of an order or supposed order. He was not undertaking to enforce the order of the court but was only punishing for its infraction. All the authorities make the distinction between the enforcement of the judgment or order of the court and a punishment for the infraction or disobedience of the order. To illustrate: a witness is brought before the court and is required to testify. This he refuses to do. The court may put him in jail until he agrees to testify, and he may in addition fine him $100, and also place him in jail three days for contempt, even after he has agreed to testify, as a

punishment. Under the first proposition the witness may be kept in jail until he agrees to testify. Under the second proposition he can discharge the punishment by paying $100 or whatever the judge may legally impose, and serve his time in jail not to exceed three days, and be discharged. My brethren seem to have lost sight of the fact that these two propositions are clearly and distinctly marked by law and the decisions. Ex parte Tinsley, supra. In the Tinsley case Tinsley refused to produce some books in a civil suit which were in his possession, which were deemed necessary or thought to be so by the trial court for the protection of the rights of others involved in the litigation. The court placed him in jail until he should produce the books. Tinsley refused, and resorted to writ of habeas corpus. He was remanded upon the theory that he must produce the·books, and that the court had a right to have his orders obeyed, and have the books produced. That was in the nature of a continuing contempt. It was also stated in the Tinsley case, in order that there might be no confusion·about this matter, that the court could as well have punished Tinsley by fine, but inasmuch as he did not do that, that question did not arise. But the distinction was drawn between the two character of cases, and the different character of punishments, and both propositions were asserted as being the law under appropriate circumstances. The facts in this case and the opinion of my brethren as well make it evident that this was not a continuing offense; at least the court did not so hold and did not punish or attempt to punish upon that theory. He was simply imposing a fine for disobedience of his order. It is unnecessary to go further into this matter. The proposition is so plain the legal profession and bench of the State will understand it, and perhaps it was even unnecessary to write what I have· written or say what I have said.

For the above reasons I most respectfully dissent from the conclusion reached by my brethren. I am clearly of the opinion the applicant, first, has not committed contempt, and, second, that the judgment of the trial court was clearly erroneous and in excess of what the punishment authorized by law ought to be, and the writ of habeas corpus was the proper remedy, and he ought to be discharged from custody.