### Ex Parte Murray Jackson.

#### No. 7877.   Decided June 27, 1923.

**1.—Habeas Corpus—Contempt—Jugment—Words and Phrases.**

It is not necessary to discuss the verbiage of the court's judgment directing that relator be held until he should fully and truthfully answer the questions propounded, the wording of the statute being, "until he is willing to testify."

**2.—Same—Grand Jury—Adjournment—Contempt.**

Where relator was punished for contempt for refusing to answer questions propounded by the grand jury, and was committed to jail, held, that the grand jury having adjourned because of the end of the term of the court, the relator could no longer be held under the former orders and judgments of the court. Following Ex parte Ellerd, 158 S. W. Rep., 1145.

**3.—Same—Order of Court—Grand Jury—Trial Judge—Vacation.**

Where from the order made by the trial judge just prior to adjournment it appears that the relator is to be held until he shall answer said questions to the judge during vacation, and thus purge himself of contempt, but as relator was not committed for refusal to answer questions to the judge but to the grand jury, this order was not authorized.

**4.—Same—Contumacy of Witness—Adjournment of Court.**

Every district judge is a magistrate, and may open a court of inquiry or conduct investigations of crime as an examining court, and the State is,

therefore, not powerless to procure the desired testimony, in case of contumacy of the witness in extending beyond the term of the court or sitting of the grand jury.

**5.—Same—Case—State—Contempt—Witness—Practice on Appeal.**

The power of the district judge was rightfully exercised in fixing the two fines of $100 each against relator, and in committing him to jail, until he be willing to testify in answer to questions before the grand jury, but the grand jury having adjourned, the commitment becomes functus officio, and upon payment of the fines, the relator is discharged.

**6.—Same—Witness—Immunity—Rule Stated.**

The right and power of the State to offer immunity to one who may himself be suspected of or charged with crime, and that he need not therefore be held to incriminate himself by disclosure as to other is well established. Following Ex Parte Copeland, 240 S. W. Rep., 314.

From Williamson County.

Original Habeas Corpus proceeding, asking release from jail under an order of the District Court punishing witness for contempt for not answering questions before the grand jury, which has since adjourned.

The opinion states the case.

*W. W. Haire,* and *Wood & Wood,* and *W. C. Wofford, A. M. Felts* and *L. Duke,* for Relator.

*R. G. Storey,* Assistant Attorney General, and *Dan Moody,* District Attorney, for the State.

LATTIMORE, JUDGE.—Relator was adjudged guilty of contempt by the Criminal District Court of Williamson county on May 9, 1923, for refusal to answer questions propounded to him by the grand jury of said county. He was fined $100 and committed to jail until such fine should be paid and until he should fully and truthfully answer said questions. Again on May 12th he was brought before the court and adjudged guilty of contempt for his refusal to answer certain other questions before said grand jury and again fined $100 and committed to jail until he should fully and truthfully answer said questions. It seems that under said commitments the relator remained in jail refusing to answer said questions until the end of the term of court, and that on the last day of said term the learned trial judge made an order reciting the order and judgment of contempt of May 9th, supra, and the further fact that because of the refusal of relator to answer the grand jury's questions its investigations were incomplete, but that relator had remained in jail and refused to give them, the information desired; further that the grand jury was compelled to report and

adjourn because of the end of the term of court as of the day of this order. Said order and judgment further recited as follows:

"Whereas, the said Murray Jackson is now in jail and still refuses to answer said questions, and this term of court by operation of law adjourns on this date;

Now, if the said Murray Jackson shall during the vacation of this court desire to answer said questions and purge himself. of his contempt, he is directed to make said fact known to the sheriff of this county, or other person having him in custody, and the sheriff of this county, or such other. person having the said Murray Jackson in custody, upon being so advised of the said Murray Jackson's desire to purge himself of said contempt,. shall forthwith bring the said Murray Jackson before the judge of this court to the end that he, the said Murray Jackson, may purge himself of said contempt and discharge the order of this court."

Relator makes direct application to this court for habeas corpus seeking release from custody under said two orders of commitment supplemented, if we may so term it, by the order made on June 4th, the day of adjournment of said court.

In our view of the question which controls we will not discuss the verbiage of the court's judgment directing that relator be held until he should "fully and truthfully" answer the questions propounded. Article 438 of our Code of Criminal Procedure provides that such contemptuous witness should be committed "until he is willing to testify." The substantial language of the statute should appear in the judgment in such case.

The question before us is,—the grand jury having adjourned because of the end of the term of court, can relator be longer held under the former orders and judgments and does the order entered on the day of adjournment justify his further retention in jail? We must answer these questions in the negative. The matter is without precedent in this State as far as we know. In Ex parte Maulsby, 13 Md. 625, upon a case in which the relator had been punished by a fine for contempt and had been committed to jail until he should appear before the grand jury and answer questions, the following was said in the opinion:

"The commitment is 'until he purge the contempt, by appearing before the grand jury,' &c., but it appears that the grand jury has been discharged, so that it has become impossible for him to obey the court's process; and the question arises whether by reason of that fact he is entitled to be discharged, or in other words whether the terms of imprisonment as fixed by the warrant is ended? This point was not presented in the argument, but it seems to me upon the best reasons which I am able to apply to the subject, and by the analogies of the law, that on this ground it is my duty to discharge the petitioner."

The court then proceeds further, quoting from Senator Platt in 9 Johns, as follows:

"In this case, the duration of the imprisonment must be determined by the terms of the commitment and its legal operation and effect. It is until he purge the contempt by appearing before the grand jury and producing the papers to them. How can that be done after the grand jury has been discharged? It has become impossible, although the petitioner should be ready and willing to do so."

In Ex parte Rowe, 7 Cal. 175, the relator was sent to jail for refusing to answer in a case pending. Thereafter the case was abated. On habeas corpus the relator was discharged, the court saying:

"What, then, was the act required to be done? To answer certain questions in a certain case. As long as the case was in existence. that long the party might be imprisoned, as he is held for refusing to perform an act which is in his power to perform; but the suit having abated by the resignation of Bates, is it any longer in his power to comply? There are neither parties nor subject-matter before the court; there is no longer a case in which the questions can be asked.

Suppose the party should now signify his willingness to answer, how could he do it? What right has the court to pursue a cause abandoned by the parties, over which it has no jurisdiction? How can the party purge himself of the contempt by coming in and offering to answer questions which no one has any longer the right to ask? The law does not require a vain act to be done."

Likewise In Re Hall, 10 Mich. 210, it appears that the relator was committed to jail for his refusal to answer and thereafter the complaint was dismissed, and it was held upon habeas corpus that the relator should be discharged.

In the case of Ex parte Ellerd, 71 Texas Crim. Rep. 285, 158 S. W. Rep., 1145, in which the question was as to what should be done in a case where one held in contempt had been given a punishment in excess of that authorized by law, this court on habeas corpus proceedings held the entire judgment was not void but that so much of said judgment as was in excess of that which the court had power to render should be held void. The trial court had asssed a fine of $250, for contemptuous conduct and this court held that the judgment was void for any amount in excess of one hundred dollars, and that upon the payment of that amount the relator should be released. While the Ellerd case was only dealing with a contempt proceeding wherein a fine was affixed as punishment, we deem its statements applicable to a case such as the one before us wherein the imprisonment was ordered as process. Our statute, Article 438, Vernon's C. C. P., authorizes the affixing of a fine not exceeding one hundred dollars (apparently as punishment for the contempt) and

also the commitment of the contemnor to jail UNTIL HE IS WILLING TO TESTIFY. We are unable to give to the language used any other interpretation except that it means,—to testify before the grand jury. The imprisonment feature of this statute is evidently for the sole purpose of procuring answers from witnesses to particular questions propounded by the grand jury before which they have been called to testify. It would seem evident that when the end is no longer possible of accomplishment, further resort to the means would be held futile. It hardly seems necessary to discuss at length the proposition that when the grand jury has adjourned sine die, there is no longer any such end possible of accomplishment as the witness being called to testify before it. Another grand jury at the next term of court is in no sense the one before which relator was questioned.

By the order made by the learned trial judge just prior to adjournment, it appears that relator is to be held until he shall answer said questions to the judge, during vacation, and thus purge himself of contempt. Relator was not committed for his refusal to answer questions to the judge, but to the grand jury. However desirable it may be to have his answers and however reprehensible his conduct in refusing to give proper information to the grand jury, we know of no law either statutory or by judicial interpretation which would authorize such order as the one under discussion. If relator upon being brought before the court in the first instance had averred his willingness to answer to the judge but not to the grand jury, it would have availed him nothing. If now brought before the judge in vacation, not sitting as an examining magistrate but simply to enable relator to answer the grand jury questions, would he answer under any binding oath? Would he be subject to any pains and penalties if he did not tell the truth? We do not think so.

The State is not powerless to procure desired testimony in case of contumacy of a witness extending beyond the term of court or the sitting of a grand jury. Every district judge is a magistrate. Arts. 41-42, Vernon's C. C. P. He may open a court of inquiry or conduct investigations of crime as an examining court. Art. 62, id., and may take all necessary steps to procure evidence authorized by law. Arts 976 and 977, Vernon's C. C. P., while naming justices of the peace, specifically authorize magistrates whenever they have good cause to believe that an offense has been committed against the law, to summon and examine witnesss and if they refuse either to appear or tell the facts, then to fine for contempt and imprison till such facts be told. This is said in view of the contention of the State that relator should be further held in order that the State may secure his testimony.

We, therefore, conclude that the power of the district judge in the case before us was rightfully exercised in fixing the two fines

of one hundred dollars each against relator, and in committing him to jail until he be willing to testify in answer to questions before the grand jury; but that the grand jury having adjourned, the commitment for refusal to answer such questions became functus officio, and that upon the payment of said fines the relator must be discharged from custody under said orders and judgments.

We have no doubt of the right and power of the State to offer immunity to one who may himself be suspected of or charged with crime and that he will not, therefore, be held to incriminate himself by disclosures as to others. His crime by proper offer of immunity is thus adequately forgiven by proper authority and he will be protected by the courts in such disclosures. Ex parte Copeland, 91 Tex. Crim. Rep., 549, 240 S. W. Rep., 314. We do not think anything appears in Ex parte Tinsley, 40 S. W. Rep., 306; Tinsley v. Anderson, 171 U. S. 101; Ex parte Muncy, 72 Texas Crim. Rep., 541, 163 S. W. Rep., 29, or the Ex parte Copeland case, supra, which is inimical to our views here announced.

It appearing that relator has paid the fines assessed against him, he will be discharged.

*Relator discharged.*