STATE OF WEST VIRGINIA *v.* J. F. WARD

(C. C. No. 457)

Submitted September 20, 1932.   Decided September 27, 1932.

*H. B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

*O'Brien & O'Brien* and *Handlan, Garden & Matthews,* for defendant.

HATCHER, PRESIDENT:

A special plea was interposed to an indictment; a demurrer to the plea was sustained and its sufficiency certified to this court.

The gist of the plea is that fourteen indictments (for violation of the banking laws in relation to the Bank of Benwood) numbered 1 to 14, inclusive, were returned against the defendant in 1925; that it was then agreed between the defendant's counsel on the one hand and the prosecuting attorney and banking commisioner on the other, subject to the circuit court's approval, that if defendant would enter a plea of guilty in one of the indictments and assist the commissioner to liquidate the accounts of the Bank, the defendant would be discharged from further prosecution under the other thirteen indictments; that the agreement was approved by the court; that the defendant did plead guilty

to indictment number 1 and did render the promised assistance to the commissioner; that the court then sentenced defendant to a term of ten years in the penitentiary, entered nolles in the other thirteen indictments, and discharged the defendant from any further appearance thereto; that due to credit of time for good behavior, the defendant has completed his term in the penitentiary, and now is haled into court to answer an indictment containing identically the same charges against him as were made in one of the thirteen indictments, i. e. number 11, from which he was discharged by the court under the 1925 agreement.

The attorney general takes the position "that the alleged agreement between the prosecuting attorney, the state commissioner of banking and counsel for the defendant is (1) null and void and of no effect, and (2) was and is against public policy." In support of the first proposition he cites as "on all fours with this" the cases of *State* v. *Keep,* 85 Ore. 265, *People* v. *Groves,* 63 Cal. App. 709, and *State* v. *Lopez,* 19 Mo. 255. Oregon and California have statutes (almost identical in terms) abolishing the entry of a *nolle prosequi,* denying to district attorneys (attorneys for the state) the right to discontinue or abandon a prosecution for crime and lodging that power solely in the trial courts. In commenting on the effect of those statutes the supreme court of California said: "The court, for the purposes of the order of dismissal, takes charge of the prosecution and acts for the people. It holds the power to dismiss, as the attorney general in England holds the power to enter a nolle prosequi by virtue of the office and the law." *People* v. *More,* 71 Cal. 546, 547. We have no such statutes on this subject as Oregon and California. Consequently, decisions in those states, ignoring agreements of district attorneys to discontinue prosecutions, can have no persuasive effect on us. In the Missouri case an agreement similar to the one now in question was made in "open court". . The ordinary inference from the last phrase would be that the agreement was made with the consent of court. The Missouri court did not draw that inference but treated the agreement as depending solely on the authority of the prosecuting attorney, which authority

it denied. In that case the defendant, instead of serving the sentence pronounced on his plea of guilty, secured a pardon. That fact hardened the court against the defendant's plea; but the opinion admitted ''if the smallest punishment allowed by law had been imposed'' it would have had its effect with the court. These reasons clearly differentiate the Missouri decision from the instant case.

In support of his second proposition the attorney general advances the hypothesis that if such agreements are held valid, ''many defendants might be induced to plead guilty to minor offenses of which they are not guilty to escape and avoid trials and heavier penalties on more grave and serious charges of which they may or may not be guilty.'' To us this possibility seems entirely too conjectural for serious consideration. It presupposes indifference, callousness or venality on the part of prosecuting attorneys—a supposition which we cannot entertain. In commenting on a similar argument against the right to dismiss criminal actions, the supreme court of Colorado said that ''from the earliest time it has been deemed necessary to lodge such power in some officer'', and upheld that right *under the common law* in the district attorney. In West Virginia that right is doubly safeguarded, as its exercise has been ''crystalized'' through long practice into concurrent action by the prosecuting attorney and the court. *Denham* v. *Robinson,* 72 W. Va. 243, 77 S. E. 970.

The memories of the members of this court run not contrary to the time when compromises were being made like the one alleged in the special plea. That practice has been recognized inferentially by statute for fifty years. See Acts 1882, ch. 41; Code 1931, 62-2-25. The attorneys have pursued that course in good faith; and the absence of any case in our appellate records challenging the practice shows faith has been uniformly kept.

Promises of immunity from prosecution made to a witness by a prosecuting officer with the consent of the court are justified on the ground of public policy. 8 R. C. L., p. 125-6. The courts treat such promises as *pledges of the public faith. Commonwealth* v. *St. John,* 173 Mass. 566, 569.

The promise alleged in the instant plea (that of the prosecuting attorney with the approval of the court) is equally a pledge of *the public faith* which in our opinion should be duly kept.

We hold accordingly that the plea is good, and reverse the ruling of the circuit court.

*Ruling reversed.*