STATE of Missouri, Respondent,

v.

Delbert Lee CROW, Appellant.

Nos. 49516, 49770.

Supreme Court of Missouri,

Division No. 2.

April 8, 1963.

Motion for Rehearing or to Transfer
to Court En Banc Denied
May 13, 1963.

Graves & Graves, Neosho, for appellant.

Thomas F. Eagleton, Atty. Gen., Richard R. Nacy, Jr., Special Asst. Atty. Gen., Jefferson City, Stewart E. Tatum, Elroy S. Thomas, Joplin, for respondent.

STORCKMAN, Judge.

These two appeals from convictions of burglary and stealing are closely related, and the facts and the legal questions presented in each case are identical. They were submitted together and are consolidated for purposes of the opinion. The defendant signed a written confession covering both offenses. No question is raised as to the sufficiency of the evidence to sustain the convictions nor as to any trial error. The essential question for decision is whether the defendant is entitled to immunity from prosecution in these two criminal cases by reason of the fact that he and his brother furnished information to the sheriff of the county with respect to a number of other crimes. The facts relating to the commission and solution of the two crimes here involved are covered in large part by the defendant's written confession which was introduced in evidence without objection of any kind.

The defendant Delbert Lee Crow was thirty-two years old in 1954, was unmarried, and lived with his parents at Carthage, Missouri. On May 27, 1954, he left home between 10 and 11 p. m. and drove his 1947 four-door Buick automobile to Kirk's Package Liquor Store, 819 West Seventh Street, in Joplin, Missouri, which had been closed for the night at about 8:30 p. m. To the rear of the liquor store was a garage owned and operated by Carl R. Shadday. The defendant first broke into the garage and stole a large number of tools, some of which he used to break into the package liquor store. He stole 17 or 18 cases of whiskey from the liquor store together with a quantity of cigarettes, worth in the aggregate about $2,000. At about 4 a. m. he finished loading the liquor, cigarettes, and tools into his car and started towards Carthage. At·a place on Highway 96, about 2½ miles east of Highway 43, he undertook to unload and hide some of the cases of the liquor in a field. While so engaged at about 4:40 a. m. he was apprehended by members of the Missouri Highway Patrol who were cruising the area in a patrol car.

The defendant readily admitted that the whiskey was stolen and he was taken with his cargo of loot to the Joplin city jail. The defendant permitted police officers to search his car and authorized them to return the stolen property to its owners which was done about midmorning shortly after the burglaries and thefts were discovered. The defendant was charged in separate informations with the offenses of burglarizing and stealing from the liquor store and the garage. The information charging the burglary of and stealing from Kirk's Package Liquor Store became Case No. 9979 in the Circuit Court of Jasper County and is our Appeal No. 49,516. The information charging the burglary of and stealing from Shadday's garage became Case No. 9977 in the Circuit Court of Jasper County and is our Appeal No. 49,770.

The defendant was admitted to bail in both cases. While on bond and before the trial of either case, he and his brother Glen were arrested in the State of Oregon where they were convicted and sentenced to a term of imprisonment in the Oregon State Penitentiary. While the defendant and Glen were being held in the Jackson County jail at Medford, Oregon, Glen communicated with George Hickam, the sheriff of Jasper County, and indicated that he and his brother "wanted to talk". Sheriff Hickam and Sheriff Hendricks of Greene County on their own behalf, and as representatives of sheriffs from 17 counties in Southwest Missouri, went to Medford, Oregon, and talked to the Crow brothers on or about July 25, 1955. The defendant and his brother gave the sheriffs information which cleared up 37 unsolved crimes exclusive of those which were the subject of the two prosecutions then pending in Jasper County. A detainer which had been lodged

with the Oregon prison officials was withdrawn and upon their release the defendant and his brother voluntarily returned to Missouri where the defendant was arrested and held for trial on the pending charges of burglarizing and stealing from the liquor store and the garage.

Prior to the trial of the liquor store case, the defendant filed a motion to dismiss the information but no evidence was offered and it was overruled. At the trial he filed a motion for acquittal on the same theory which was that he was entitled to immunity from prosecution by reason of the information given the sheriff. Evidence was heard on this issue by the court out of the presence of the jury and the motion was denied. The case was then submitted to the jury and the defendant was found guilty. Since the defendant was charged under the Habitual Criminal Act, the court heard evidence and found that he had three previous convictions. On the liquor store conviction, Circuit Court No. 9979, our No. 49,-516, the court sentenced the defendant to imprisonment for a term of ten years for burglary and five years for stealing; the sentences were ordered to run concurrently.

Thereafter in Circuit Court Case No. 9977 (the Shadday garage prosecution) which is our Appeal No. 49,770 the parties filed a stipulation waiving a jury trial and submitting the issues to the court on the evidence adduced in Case No. 9979 and certain other facts recited in the stipulation. The court found the defendant guilty and rendered judgment and sentence that he be imprisoned for a term of five years for burglary and three years for stealing. The sentences were ordered to run concurrently with each other and also concurrently with the sentences in Case No. 9979.

The sole ground in the motion for a new trial and the only question presented on appeal relates to the defendant's claim of immunity from prosecution based on overtures made by the sheriff of Jasper County in connection with the information furnished by the defendant and his brother at the Medford conference.

In his brief the defendant cites only five cases, four of which are from other jurisdictions. These cases do not contribute anything persuasive to the decision of the immunity issue. In Turnage v. State, 134 Miss. 431, 99 So. 9, Turnage testified on behalf of the defense at the separate trial of a codefendant. At his own trial Turnage claimed immunity to prosecution under a state statute which provided that no person should be excused from testifying in a prosecution for violation of the intoxicating liquor laws on the ground of self-incrimination, but that no such person should be prosecuted as a result of so testifying. The court held the only persons entitled to immunity under the statute were those placed on the stand by the state. This state has similar statutes relating to specific subjects which authorize a grant of immunity to an offender in order to obtain his testimony on behalf of the state in the prosecution or investigation of criminal activities. See State ex rel. North v. Kirtley, Mo., 327 S.W.2d 166, 170. Ex parte Jackson, 95 Tex.Cr.R. 200, 253 S.W. 287, 28 A.L.R. 1360, holds that a person who has refused to answer questions propounded by a grand jury cannot be imprisoned after the grand jury has adjourned sine die and the court term has ended. It recognizes, however, the right and power of a state to offer immunity to one who may be himself suspected of or charged with crime. In Camron v. State, 32 Tex. Cr.R. 180, 22 S.W. 682, the defendant pleaded in bar an agreement for immunity based on his turning state's evidence. The court upheld the plea and stated that "on the ground of public policy, it has been uniformly held that a state may contract with a criminal for his exemption from prosecution, if he shall honestly and fairly make a full disclosure of the crime, whether the party testified against is convicted or not." In State v. Ward, 112 W.Va. 552, 165 S.E. 803, 85 A.L.R. 1175, the defendant relied on a promise of the prosecution to

dismiss thirteen remaining indictments if he would plead guilty to one. After he had served the sentence imposed, the state undertook to prosecute the defendant on a charge the same as one of those previously dismissed. The court held the defense good stating: "Promises of immunity from prosecution made to a witness by a prosecuting officer with the consent of the court are justified on the ground of public policy."

The other case cited by the defendant is State v. Williamson, 339 Mo. 1038, 99 S.W.2d 76, in which the defendant was convicted of first-degree murder. He had been previously convicted of murder in Illinois and had served 21 or 22 years of a life sentence in the penitentiary at Chester. He had violated his parole and had come to Missouri where he had lived until he was arrested and charged with a homicide committed in this state. While in custody, he made a written confession which was induced by promises of the sheriff and his deputies to recommend to the prosecuting attorney that the defendant be sent back to the Illinois penitentiary where he had old friends. The confession was held to have been improperly admitted in evidence because it was involuntary in that the promise aroused expectation that the defendant would not be held to answer for the crime charged in Missouri. The opinion states that such a confession to be rendered inadmissible on the ground that it is involuntary "must have been made to a person in authority in consequence of improper influences exerted by him, and, if no threats of harm or promises of worldly advantage were made by such officer, * * * the confession is admissible." The opinion also holds that: "There is no doubt about the fact that 'a person in authority' within the meaning of the above rule would include the sheriff and deputy sheriffs who had the appellant in their custody." 99 S.W.2d 79. The present cases, however, do not involve the admissibility of evidence.

The state properly asserts that the involuntariness of the confession used at the trial is not involved in this case because it was obtained long prior to the Medford meeting and under circumstances about which there is no complaint. Nothing disclosed by the defendant at Medford was used or offered for use as evidence at the trial of these cases. The defendant seeks to utilize the Medford incident as a defense in bar of the prosecution itself, not as a means of excluding evidence. The defendant's contention is that he is entitled to immunity from prosecution in these cases because Sheriff Hickam "specifically promised the Defendant immunity from any and all prosecutions for alleged crimes committed in Jasper County prior to July of 1955 if Defendant would give Sheriff Hickam certain information concerning the various alleged crimes previously committed in Jasper County", and that the defendant and his brother performed their part of the bargain by giving Sheriff Hickam information which solved 37 crimes in Jasper and adjoining counties.

The sheriffs of Jasper and Greene Counties went to Medford in response to a letter from Glen Crow. After Glen and the sheriffs had talked for a while the defendant was brought into the conference. Glen testified in substance that his proposition to the sheriff was that "we'd trade our information to clear up his burglaries, and he'd use his influence to help us"; that if he and his brother furnished the information to clear up the unsolved crimes the sheriff would use his influence to get the pending charges dismissed; that the sheriff advised him that it would be up to the prosecuting attorney's office whether the charges would be dismissed; that the sheriff did not exactly promise immunity because he stated that he did not run the prosecuting attorney's office, but the sheriff did assure Glen and the defendant that he had enough influence that the cases would not be prosecuted if he went to the prosecutor and told him that they had cooperated and cleared up some other matters.

The defendant testified that the sheriff stated that he was interested in clearing

his books of unsolved crimes; that he told the sheriff that he would not admit to anything as long as any charges were pending, and the sheriff said that he could promise that there would be no prosecution in Jasper County; that at the time Sheriff Hickam made these statements the defendant believed the sheriff had authority to give immunity from prosecution on the two pending charges because the sheriff was a representative of the county elected by the people and was talking in his official capacity as sheriff. Neither the defendant nor Glen talked to the prosecuting attorney of Jasper County. The only person they ever talked to was the sheriff.

Sheriff Hickam denied that he had promised the defendant immunity from prosecution of the pending cases in return for making admissions to clear up unsolved crimes. He testified that he told the Crow brothers that he could not promise immunity but that in all probability there would be no charges filed on what they talked about that day; that nothing could be done about charges already filed. The sheriff had a list of unsolved crimes and asked the Crow brothers what they knew about each of them. The list and the brothers' answers are not in evidence, but it does appear that the information the brothers gave the sheriff explained the commission of 37 other crimes in which they or a cousin of theirs had participated. Delbert and Glen were evidently quite cooperative; in fact, there was some testimony that Glen contemplated writing a book about their exploits.

We are inclined to believe as the trial court might well have found that the sheriff did not, as the defendant testified, undertake to grant immunity in return for the information furnished, but at best he only offered to intervene with the prosecutor on behalf of the Crow brothers as appears from the testimony of the sheriff and Glen Crow. Nevertheless, if the facts were as the defendant contends, it would be of no avail because the sheriff of Jasper County had no authority to grant the defendant immunity from prosecution in the pending cases.

■ This State along with others has been quite chary about granting immunity from prosecution for criminal offenses. As we have previously noted, this State has immunity statutes pertaining to certain situations. State ex rel. North v. Kirtley, Mo., 327 S.W.2d 166, 170. The defendant does not bring himself under any of these statutes, and the courts are not inclined to extend their coverage. Ex parte Arvin, 232 Mo.App. 796, 112 S.W.2d 113, 118[6]. In the absence of specific statutory authority, there is an "established practice" not to prosecute an accomplice who has testified for the government in the expectation of immunity against prosecution, and such a witness is sometimes said to have "an equitable claim to immunity from prosecution." 22 C.J.S. Criminal Law § 46(1), p. 156. But the courts of this State have held that an agreement of a prosecuting official to discharge a prosecution against an accomplice in consideration of his testifying against a confederate cannot be enforced and is not effective as a bar to a prosecution. State v. Myers, 330 Mo. 84, 49 S.W.2d 36, 40 [3]; State v. Guild, 149 Mo. 370, 50 S.W. 909, 910[1]. See also annotations: 13 A.L.R.2d 1439, 1441, 85 A.L.R. 1177, and L.R.A.1918A, 376, 378.

■ But regardless of a prosecuting attorney's control over the prosecutions in his county, it seems quite clear that the sheriff has no standing to grant or offer immunity as a bar to a prosecution. 15 Am.Jur., Criminal Law, § 322, p. 19, in discussing who may grant immunity states: "Nor can police officers or a sheriff grant immunity from prosecution to one of two or more persons accused of a crime on condition of confession and readiness to become a witness against the others accused, at least, where the promise is made without the authority of the prosecuting attorney; and such a promise cannot be pleaded in

bar of an indictment for the crime." It is sufficient for our purposes to say that the sheriff did not have authority to grant immunity from prosecution in the circumstances of this case. See also Commonwealth v. St. John, 173 Mass. 566, 54 N.E. 254.

■ In his points relied on, the defendant cites § 10 of Art. I, Constitution of Missouri, V.A.M.S., providing that no person shall be deprived of life, liberty, or property, without due process of law. There is no discussion of this constitutional provision; it is not related to any of the facts or circumstances in evidence and is not referred to in the motion for new trial. The bare mention of the constitutional provision presents nothing for review.

We have considered all questions properly preserved and find them to be without merit. Accordingly the judgment in each case is affirmed.

All of the Judges concur.

On Motion for Rehearing or to Transfer to Court en Banc

PER CURIAM.

In his motion for rehearing or, in the alternative, to transfer to the court en banc, the appellant complains that the court did not specifically rule upon the matters which are preserved for review without assignment of error under S.Ct. Rule 28.02, V.A. M.R. In his brief filed in this court the defendant did not charge any deficiencies in this regard and does not now do so. In usual course we examined and considered the record as required by our Rule 28.02 and found all matters and items specified therein to be sufficient and free from error. As stated in the original opinion we considered all questions properly preserved and found them to be without merit.

The motion for rehearing or, in the alternative, to transfer to the court en banc is overruled.