210 So.2d 331

**In re Aaron M. KOHN.**

**No. 49003.**

April 29, 1968.

Rehearing Denied June 4, 1968.

Herbert J. Garon, Milton E. Brener, Carl J. Schumacher, Jr., New Orleans, for relator.

Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for respondent.

SANDERS, Justice.

We granted certiorari to review the conviction and sentence for contempt of court of Aaron M. Kohn, managing director of the Metropolitan Crime Commission of New Orleans. The trial court sentenced Kohn after he refused to disclose to the Grand Jury the name of the confidential informer who had given him certain infor-

mation concerning gambling operations in New Orleans.

The Grand Jury proceeding is a sequel to In Re Metropolitan Crime Commission, 251 La. 518, 205 So.2d 384. Hence, the events forming the larger background of the proceedings assume importance.

In September, 1967, Life Magazine published a news article alleging the existence of "organized crime" in several cities, including New Orleans. The information pertaining to New Orleans allegedly emanated from the Metropolitan Crime Commission. As a result of this article, the District Attorney for Orleans Parish initiated a grand jury investigation to determine the validity of the magazine's assertions. The court summoned Kohn and fourteen other members of the Metropolitan Crime Commission to appear before the Grand Jury for testimony. Thereafter, the Grand Jury caused a subpoena duces tecum to issue for the production of all papers or documents containing the names of confidential informers of the Metropolitan Crime Commission and the amounts paid to each of them. The subpoenas were directed to E. C. Upton, Jr., president of the Crime Commission, James W. Mills, Jr., treasurer, Philip L. Frank, Sr., secretary, and Aaron Kohn, managing director.

All responding parties filed a motion to quash the subpoena duces tecum. The motion to quash alleged the subpoena was so

broad as to be unreasonable and oppressive. The motion further alleged:

"Individual movers aver that insofar as the said subpoenas purport to require production of their personal records and papers that compliance with the said subpoenas would amount to compulsory production of evidence against themselves in criminal proceedings in violation of the protections afforded by the Fifth Amendment of the United States Constitution and by pertinent provisions of the Louisiana State Constitution.

\* \* \* \* \* \*

"Movers further aver that disclosure of identity of informers of the Metropolitan Crime Commission of New Orleans, Inc. is violative of the rights of movers as protected by the First Amendment of the United States Constitution, and would effectively destroy the operation of the Commission in its fight to improve law enforcement and administration of justice."

The trial judge overruled the motion to quash the subpoena duces tecum. This Court granted certiorari with a stay order to review the ruling. On December 11, 1967, the Court handed down its decision, rejecting the constitutional defenses, but quashing the subpoena duces tecum under LSA–C.Cr.P. Article 732 on the ground it was "highly unreasonable and oppressive."

On December 13, 1967, before the judgment of this Court rejecting the constitutional defenses became final, the Grand Jury secured another subpoena duces tecum directed to the same parties ordering them to produce the next day all Crime Commission papers reasonably necessary to obtain the following information:

"The name and address of all informers, including informers being classified as confidential informers who within the previous year have furnished the Metropolitan Crime Commission of New Orleans, Inc., with information relative to organized crime in Orleans Parish and which information was furnished to Life Magazine for its publication alleging the existence of organized crime in Orleans Parish."

The court also summoned the individual officers of the Commission to appear before the Grand Jury to testify on December 14, 1967.

When the respondents appeared on December 14, in compliance with the subpoenas, the State consented to a continuance of the subpoena duces tecum until the judgment of this Court in the first proceeding became final. The State also postponed the testimony of all Commission officers except Aaron Kohn.

During the Grand Jury's interrogation of Kohn, it asked Kohn to disclose the name of a confidential informer who had given

the Crime Commission information about the gambling activities of a named individual. On the advice of counsel, Kohn refused to answer the question, asserting his rights under the First and Fifth Amendments of the United States Constitution and "further on the ground that the issue of confidential informers is still before the Louisiana Supreme Court."

Kohn was then sworn in open court. In the presence of the trial judge, the foreman of the Grand Jury repeated his earlier question. After the judge instructed Kohn to answer, he again refused to do so, assigning the same reasons for his refusal.

The trial judge then ruled: " * * * you are now in conempt of Court. I wil give you another opportunity to answer the question." Kohn demurred. The judge then stated: " * * * it is the judgment of this Court that you are in contempt. And, it now becomes my duty to sentence you for this contempt. I am going to sentence you under the last paragraph of Article 25, to be imprisoned in the Parish Prison until you decide to answer this question. When you are prepared to answer the question, you notify the Court, and you will be brought into Court so that you might answer the question, and then you will be released."

Counsel for Kohn requested a stay of the sentence to apply to this Court for supervisory writs. The trial judge refused a stay and remanded Kohn to the parish jail.

On Kohn's application for writs, filed the following day, we granted a stay of sentence and ordered the trial judge to answer the application.

On January 15, 1968, this Court denied a rehearing in In Re Metropolitan Crime Commission, supra. On the following day, we granted certiorari in the present proceeding.

■ At the threshold of the case, the State maintains this proceeding is moot because the Grand Jury that sought the information was discharged on March 6, 1968. The State reasons that Kohn can no longer answer that Grand Jury's question to terminate his sentence. We find the record insufficient, however, to establish the imprisonment was conditioned upon relator's disclosing the name of the informer only to that particular Grand Jury. Insofar as the record shows, the relator could comply by furnishing the information to a succeeding Grand Jury. Hence, we reject the allegation that the case is moot.

Relator Kohn relies upon a two-fold defense in this Court. First, he asserts the subpoena and subsequent proceeding to compel disclosure of the name of a confidential informer violated the stay order of this Court in the prior proceeding, where a constitutional bar had been urged to such disclosure. Second, he asserts his privilege against self incrimination under the Fifth Amendment of the Constitution of the United States. To support this constitu-

tional theory, he relies upon two recent decisions of the lower federal courts arising from the same Grand Jury investigation, Chandler v. Garrison, 286 F.Supp. 191 (E.D.La.1968) and Sheridan v. Garrison, 273 F.Supp. 673 (E.D.La.1967).

As to the stay order, Kohn points out that, as a party to the first proceeding, he had raised constitutional objections to disclosing the names of confidential informers under the First and Fifth Amendments to the Constitution of the United States. At the time of the present subpoena, the case was still pending on rehearing.

The State contends the present proceeding is unaffected by the previous stay order. It reasons that the issue in the former proceeding was whether written documents of a *corporation,* the Metropolitan Crime Commission, containing the names of confidential informers were constitutionally protected. The issue here, the State suggests, is whether Aaron Kohn, as an *individual,* can be forced to give the names of such informers by verbal testimony.

The order relied upon stayed and suspended "until the further orders of this court all proceedings against the relator in * * * [the] Criminal District Court." The judgment in the prior case, terminating the stay order, became final when this Court denied a rehearing on January 15, 1968. LSA–C.Cr.P. Art. 922. Hence, the stay order was in effect during the present proceeding and raises the first barrier to the contempt sentence.

We decline to accept the proposed technical distinction between the proceedings. The subpoena duces tecum in the first proceeding was directed to Kohn. He was a party to that proceeding and raised constitutional objections to the disclosure of the names of confidential informers. At the time of his present sentence for contempt, his attorneys were still before this Court urging that the state and federal constitutions barred the compulsory disclosure of such names. It is true the Grand Jury in the former case sought the names from writings in Kohn's possession and in this case from his memory. But this circumstance did not alter the real thrust of the proceeding. The objective remained the same: to compel the disclosure of the names of the confidential informers.

■ We conclude the stay order barred the Grand Jury proceeding against relator to compel the disclosure of the name of the confidential informer. Hence, relator's position is well founded.

Since this conclusion requires a reversal of the contempt judgment, we do not reach the substantial constitutional question posed by this case.

For the reasons assigned, the contempt judgment and sentence are reversed and

set aside, and relator Aaron Kohn is discharged.

FOURNET, C. J., concurs with written reasons.

HAMITER, J., concurs in the result.

McCALEB, J., concurs in the result, since the decree orders the discharge of relator.

SUMMERS, J., dissents.

BARHAM, J., dissents with written reasons.

FOURNET, Chief Justice (concurring):

I cannot subscribe to that part of the opinion holding that the proceedings in this matter is not moot in that "the relator could comply by furnishing the information to a succeeding grand jury." The author evidently overlooked the fact that the legislature in compliance with the constitutional mandate that "a grand jury of twelve * * * shall be empaneled in each parish twice in each year * * *", Section 42 of Article VII, in adopting a Code of Criminal Procedure provided, "* * * A grand jury in Orleans Parish shall be impaneled on the first Wednesday of March and September of each year. * * *" Thus, it may be seen that the power and authority of the grand jury for the Parish of Orleans are for a limited and specified period of time and when discharged, its investigatory, accusatory and subpoena power terminates. It necessarily follows, therefore, that when Mr. Kohn was held in contempt of court for his failure to comply with the judge's order to answer a certain question posed by the grand jury, sentencing him "to be imprisoned in the parish prison until (he) decides to answer the question", it became impossible for him to purge himself of the contempt when the particular grand jury's term expired on March 5th with the new one sworn in on March 6, for as aptly observed in United States v. Levine, 2 Cir., 288 F.2d 272, "So far as the coercive part of a contempt sentence is concerned, discharge of the Grand Jury making compliance with the court order impossible has a like effect of voluntary compliance with the order." See also, Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L. Ed.2d 622, wherein the United States Supreme Court declared, "Where the grand jury has been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt."

I, therefore, concur in the results reached that relator, Aaron M. Kohn, be discharged.

BARHAM, Justice (dissenting).

The relator, Aaron M. Kohn, refused to answer a question propounded to him by a

grand jury empaneled in Orleans Parish for the six-month term from September, 1967, to March, 1968. The district court found him in contempt and sentenced him as follows:

"* * * Mr. Kohn, it is the judgment of this Court that you are in contempt. And, it now becomes my duty to sentence you for this contempt. I am going to sentence you under the last paragraph of Article 25 [C.Cr.P.], to be imprisoned in the Parish Prison until you decide to answer this question. * * *"

A stay of sentence and certiorari were granted by this court.

The State seriously contends that the matter is now moot since the grand jury which subpoenaed relator and to which he was ordered to answer was discharged March 6, 1968. The majority holds that the question presented to this court is *not* moot for the reason that:

"* * * We find the record insufficient, however, to establish the imprisonment was conditioned upon relator's disclosing the name of the informer only to that particular Grand Jury. Insofar as the record shows, the relator could comply by furnishing the information to the succeeding Grand Jury. Hence, we reject the allegation that the case is moot."

The majority is viewing with too much concern the record rather than the law for the answer to the question of whether this case is moot.

Article 25 of the Code of Criminal Procedure reads:

"* * * When a contempt of court consists of the omission to perform an act which is yet in the power of the person charged with contempt to perform, he may be imprisoned until he performs it, and in such a case this shall be specified in the court's order."

The district court not only specified an indeterminate sentence conditioned upon relator's compliance with the court order, but cited the exact statutory authority for imposition of such a sentence. The court had only one purpose in imposing this sentence, and it used the appropriate means for its accomplishment.

A grand jury for the Parish of Orleans, which has power and authority only for a limited and specified period of time, had required certain information of relator who had been called to testify before it. The court in an attempt to have the information conveyed to that grand jury imposed a persuasive and coercive sentence for contempt. It has been repeatedly held that this type of proceeding is a civil contempt proceeding, and that the sentence is prospective and is imposed as coercion to act, as opposed to punishment for wrongful act or omission.

"* * * And the judgments imposed conditional imprisonment for the obvious purpose of compelling the witnesses to obey the orders to testify. When the petitioners carry 'the keys of their prison in their own pockets,' In re Nevitt, 117 F. 448, 461 (C.A. 8th Cir.1902), the action 'is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.' * * *" Shillitani v. United States, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622, 626 (1966).

"So far as the coercive part of a contempt sentence is concerned, discharge of the Grand Jury making compliance with the court order impossible has a like effect of voluntary compliance with the order. * * *" United States v. Levine, 288 F.2d 272, 274 (C.C.A. 2nd 1961).

Shillitani v. United States, supra, is most definitive, and is undoubtedly the law of this land in regard to the question presented to us. The United States Supreme Court said:

"However, the justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order. * * * *Where the grand jury has been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt.* Accordingly, the contempt orders entered against Shillitani and Pappadio were improper insofar as they imposed sentences that extended beyond the cessation of the grand jury's inquiry into petitioners' activities. *Having sought to deal only with civil contempt, the District Courts lacked authority to imprison petitioners for a period longer than the term of the grand jury.* * * * Once the grand jury ceases to function, the rationale for civil contempt vanishes, and the contemnor has to be released. * * *" (384 U.S. p. 371, 86 S.Ct. p. 1536, 16 L.Ed.2d pp. 627–628) (Emphasis supplied.)

Article 414 of the Code of Criminal Procedure provides that:

"* * * A grand jury in Orleans Parish shall be impaneled on the first Wednesday of March and September of each year. * * *"

Article 444(A), Code of Criminal Procedure, states:

"A grand jury shall have power to act, concerning a matter, only in one of the following ways:

"(1) By returning a true bill;

"(2) By returning not a true bill; or

"(3) By pretermitting entirely the matter investigated.

"The grand jury is an accusatory body and not a censor of public morals. It

shall make no report or recommendation, other than to report its action as aforesaid.

" *    *    *    *    *    * "

Under constitutional and statutory limitations neither judge nor grand jury may bind a succeeding grand jury. Each grand jury stands alone and acts independently under the specific authority granted it by law. When a grand jury is discharged, all of its authority disappears. Only the positive actions taken pursuant to Article 444(A) of the Code of Criminal Procedure have life thereafter. The grand jury's investigatory power, accusatory power, and subpoena power all vanish with the cessation of its term. All pending orders and subpoenas become nugatory and fruitless.

The subpoena for Mr. Kohn has no validity now; the order to answer the question is no longer effective; relator cannot purge himself of contempt; and the sentence for contempt cannot be executed. The trial judge *could not* make any proviso for answer to be given before any subsequent grand jury.

Fortunately for Mr. Kohn, the majority has struck down the contempt sentence when it considered the merits of the case. Suppose their holding on the merits had upheld the sentence. Poor Mr. Kohn would be incarcerated for life, since he could not purge himself. An answer delivered to the judge alone would not cleanse him and entitle him to freedom. The judge could not order another grand jury to accept the answer. No legal remedy would be available to the relator, and he would be at the "mercy" of equity and justice for redress.

The trial court could have punished with a criminal contempt sentence of fixed duration which might extend beyond the grand jury term. It chose, however, to impose the coercive civil contempt sentence which became null and void with the nihility of the grand jury.

It is interesting to note that state decisions have followed the rule that coercive sentences for grand jury contempt become null and extinct when the grand jury term ends. See Ex parte Jackson, 95 Tex.Cr.R. 200, 253 S.W. 287, 28 A.L.R. 1360 (1923); Yates v. Lansing, 9 Johns. 395, 6 Am.Dec. 290; Ex parte Rowe, 7 Cal. 175 (1857); Ex parte Maulsby, 13 Md. 625 (1859); State v. Granchay, 1 Ohio App.2d 307, 204 N.E.2d 562 (1964).

The sentence in the instant case was imposed to allow the relator to purge himself of contempt and to aid that grand jury in its investigation. Since that grand jury is discharged, it has become impossible for the relator to obey the court's order. Because the grand jury to which the relator should have responded has been discharged, for all practical purposes one of the parties is no longer before this court. Since the

sentence cannot be executed, that sentence is no longer before this court. When neither party nor subject matter is before the court, there is no longer a case in which the issues can be raised, and therefore the matter is moot.

The majority's statement that "Insofar as the record shows, the relator could comply by furnishing the information to the succeeding Grand Jury" begs the question. It would be an error of law for the district judge to have issued such an order. It is the law and not the record which is controlling in this case. The majority has disregarded the specific binding authority of the United States Supreme Court and jurisprudence. I respectfully dissent.

SUMMERS and BARHAM, JJ., are of the opinion that a rehearing should be granted.