Ex parte David Bartine Timothy
MYRICK, Jr., Relator.

No. 15829.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Dec. 9, 1971.

Rehearing Denied Jan. 6, 1972.

Domestic Relations No. 3 of Harris County, Texas, reciting that Relator, David Bartine Timothy Myrick, Jr., in open court refused to sign a certain trust agreement which the court found to be an "appropriate Trust Agreement pursuant to Paragraph 23 of this Court's judgment of June 7, 1968." It recited that Relator offered no valid objection to the form of said agreement attached to and made a part of the judgment of contempt. It then ordered that Relator be committed to the county jail and be detained therein until he shall purge himself by signing and executing the trust agreement.

The court also found that Relator was in contempt of court for failing to make his child support payments for the months of May and June, 1971, "timely and as ordered in said Judgment of June 7, 1968," reciting that the payments were made after the motion for contempt was filed. The contempt order recites that Relator's failure to make these payments "was willful and intentional and a deliberate violation" of said order. He was ordered committed to the county jail for five hours from 3:00 p. m., June 29, 1971, and fined $100.00. It was provided that "upon such imprisonment for five hours and the payment of such fine, he shall have purged himself of this contempt for failing to make child support payments."

The judgment also states that "because of the willful and intentional disobedience of the judgment . . . it has been necessary for the Petitioner to retain the services of an attorney . . . and that a reasonable fee for said attorney is $1,000.00 . . . "

Shirley & Chilton, Douglas H. Chilton, Texas City, for appellant.

Tom Alexander, Donald B. McFall, Houston (Butler, Binion, Rice, Cook & Knapp, Houston, of counsel), for appellee.

COLEMAN, Justice.

This is an original habeas corpus proceeding.

A judgment of contempt and order of confinement was issued by the Court of

It was then "Ordered, Adjudged and Decreed" that Relator was in contempt of court and that he be kept in the custody of the Sheriff of Harris County, Texas, until he purged himself of the contempt by executing the trust agreement and delivering same to the Judge of the Court, and until he paid the fine and court costs, including the attorney's fee, to the clerk of the Court.

Relator asserts that the action of the court in finding him in contempt for refusing to execute the trust agreement was error in that the agreement to create a trust made a part of the judgment of divorce was not enforceable by contempt proceedings because it is too vague and indefinite.

This point must be sustained. In Ex Parte Slavin, 412 S.W.2d 43 (Tex.1967), the court said:

"It is an accepted rule of law that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him . . .

" . . . .

"Texas decisions hold that an order of a court, such as an 'injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing.' " (citations omitted)

Here Relator is held in contempt for refusing to sign a particular trust agreement as ordered by the trial judge. The authority of the judge to require Relator to sign a trust agreement can be found only in the power of the court to enforce its judgments. The court, in ordering the execution of certain instruments, has effectively issued a mandatory injunction. Ex Parte Slavin, supra.

The provisions of the judgment referred to read: " . . . and the parties are ordered to make all payments, deliveries and execute all notes and instruments, to carry this agreement into full force and effect, forthwith. . . ."

" . . . .

"As set out above, the property settlement of the parties is approved by the court and each party is ordered to deliver to the other party the necessary properties, instruments, payments, evidences, or other manifestations of the agreement, so as to effectuate the agreement and conclude the disposition forthwith."

■ "Judgments granting injunctive relief are enforced by contempt proceedings . . ." Lowe and Archer, Injunctions and Other Extraordinary Proceedings, § 360, p. 375. Courts have inherent power, as well as certain statutory power, to enforce their judgments. Smith v. Miller, 66 Tex. 74, 17 S.W. 399 (1886); Upham v. Upham, 200 S.W.2d 880 (Tex. Civ.App.—Eastland 1947, ref., n. r. e.); 49 C.J.S. Judgments § 586 et seq.; Rule 308, Texas Rules of Civil Procedure.

■ The jurisdiction of the trial court to enforce its judgment was not lost simply because the judgment became final by virtue of Rule 329b(5), T.R.C.P., after the expiration of thirty days from the date of its entry. A court has jurisdiction to punish one who violates a prohibitory injunction at any time after the judgment becomes final. Reason compels the conclusion that the same rule should apply to any mandatory order or judgment which has not become dormant. Ex Parte Elmore, 161 Tex. 585, 342 S.W.2d 558 (1961); 17 Am.Jur.2d, Contempt, § 63, p. 63.

We entertain no doubt but that the trial court has jurisdiction to enforce his judgment by a contempt order in a proper case after it becomes final and he loses jurisdiction of the case in the sense that he can no longer amend the judgment or grant a new trial. We are primarily concerned with the question of whether this is a proper case for enforcement by means of the contempt of court procedure. We conclude that the order requiring appellant to execute instruments to carry the agreement into effect, and to deliver to his former wife the necessary instruments to carry the agreement into effect, is not sufficiently definite to support the judgment finding appellant

guilty of contempt for his refusal to execute the trust agreement.

First, the agreement, and the judgment in which it is incorporated, fails to directly require appellant to enter into a contract with the named trustee. Trusts may be created by several different procedures. Texas Trust Act, Art. 7425b–7, Vernon's Ann.Civ.St. Only by implication can a duty on part of appellant to enter into an agreement with the trustee be found. The court did not attempt to require the named trustee to accept the duties and responsibilities of such a position. As a result it was a practical necessity to insert into such an agreement conditions acceptable to the trustee. Certain provisions of the trust agreement point up the indefinite nature of the decree.

The judgment does not specify the disposition to be made of the fund if one of the beneficiaries should die leaving issue. The proposed trust agreement provides for the contingency. The judgment provides that the trustee is to have "all authority granted under the Texas Trust Act to invest both corpus and income and the other usual privileges and duties of a trustee under the Texas Trust Act." The proposed trust agreement spells out the powers and duties of the trustee in considerable detail. It provides that the trustee shall not be required to post bond, which under the Texas Trust Act he would be required to do; that the trustee, in his sole reasonable discretion, shall allocate the revenues of the trust fund as to principal or income, which otherwise would be governed by specific provisions of the Act; that the trustee shall not be liable for any loss or depreciation in value of the trust estate, except such loss as is attributable to gross negligence, a willful breach of trust or bad faith on the part of the trustee, whereas the act provides that in investing the trust fund the trustee shall exercise the judgment and care which men of ordinary prudence and intelligence exercise in the management of their own affairs.

The judgment does not require that the terms of the proposed trust agreement set out above be incorporated therein. Reasonable persons might differ as to the advisability of including such provisions in the trust instrument. In the event there is a controversy over the contents of the trust instrument a further hearing to enforce the agreement is necessary.

The trial court ordered Mr. Myrick to sign the "Irrevocable Trust Agreement" which we have discussed, and found him in contempt by reason of his refusal to do so. In Ex Parte Duncan, 42 Tex.Cr.R. 661, 62 S.W. 758 (1901), the court said:

" . . . If the original order was not sufficient to require obedience, certainly no illegal arrest under such order would add weight, strength, certainty, or validity to it; . . . A judgment which is void is conclusive of nothing, and may be the subject of inquiry in a collateral proceeding. The recited facts therein are not binding in any way nor for any purpose. Nor can the court make contempt of that which is not contempt . . .; and every attempt to do so would be in excess of authority or jurisdiction . . . 'There are three essential elements necessary to render conviction valid. These are that the court may have jurisdiction over the subject-matter, the person of the defendant, and the authority to render the particular judgment. If either of these essential elements are lacking, the judgment is fatally defective, and the prisoner held under such judgment may be released on habeas corpus.' " (Citations omitted) See also Ex Parte Vogler, 110 Tex.Cr.R. 579, 9 S.W.2d 733 (1928); Ex Parte Miller, 400 S.W.2d 295 (Tex.1966).

 The trial court lacked authority to order Mr. Myrick to sign the trust agreement, or to find him in contempt of court for refusing to do so. The judgment in so far as it orders him confined until he purged himself of contempt by signing the

instrument, is also void. The fact that this part of the order is void will not excuse Relator from the necessity of complying with the valid portion of the decree in order to secure his release from custody. Ex Parte Mabry, 122 Tex. 54, 52 S.W.2d 73 (1932); Ex Parte Jackson, 95 Tex.Cr.R. 200, 253 S.W. 287 (1923).

Relator was also committed on the finding of the trial court that he willfully and intentionally failed to make certain child support payments on the dates specified in the support order. He contends that this portion of the judgment is also void because the evidence adduced at the hearing which resulted in his commitment establishes his involuntary inability to comply with the court's order.

The principal of law relied on was recognized and enforced by the Supreme Court of Texas in Ex parte Gonzales, 414 S.W.2d 656 (1967). It was also recognized in Ex Parte Helms, 152 Tex. 480, 259 S. W.2d 184 (1953), where the court said that a proceeding of this nature is a collateral attack on the contempt judgment and that the court may order the contemnor released only where the judgment is void because of lack of jurisdiction in the court to render it, or because "the contemner was deprived of his liberty without due process of law which in itself involves a want of jurisdiction." The court also said that it had no authority to weigh the evidence adduced in the contempt proceeding for the purpose of determining whether it preponderates against the judgment. After reviewing the evidence the court held:

". . . this court cannot say that the trial court's express finding that relator had actual knowledge of the support order or its presumed finding that he was able to make the support payments substantially as they accrued and is now able to pay the arrearages is so completely without evidentiary support as to render that court's judgment void on the ground that it deprives relator of his liberty without due process of law."

Our review of the evidence in this case leads us to the conclusion that the trial court's findings with reference to his failure to make timely support payments are not so completely without evidentiary support as to render that court's judgment void as to the punishment ordered for that conduct. Ex Parte La Rocca, 154 Tex. 618, 282 S.W.2d 700 (1955).

Relator also complains that the trial court lacked jurisdiction to award the attorney's fee as part of the court costs and to enforce its payment under his contempt powers. Rule 308–A, T.R.C.P., allows an attorney's fee to be taxed as part of the costs in an action to enforce child support orders. The constitutionality of this rule was upheld in Ex Parte Helms, supra.

Relator contends, however, that the allowance of an attorney's fee was not proper in a suit to enforce an agreed property settlement, and that the record reflects that most of the time and effort of the attorney in this case was spent on that aspect of the case, rather than in an effort to enforce the child support order. The court's judgment in the contempt action reflects that the attorney's fee was allowed for the work required on both aspects of this case.

The trust agreement was a part of the property settlement. It was designed to assure funds for the education of the children after they were eighteen years of age.

Art. 4639a, V.A.C.S., provides the authority of the trial court to enforce child support orders by contempt proceedings. This article is the source and limit of judicial power to order relator to pay child support, and it authorizes an order to pay child support until a child reaches the age of eighteen years, but not beyond. Ex Parte Williams, 420 S.W.2d 135 (Tex. 1967).

The trust fund is available as a source of funds in the case of an emergency at any time. The expenses of the children for college training would be paid from this fund prior to the date on which

they reach the age of eighteen, as well as after that date. However this provision of the court's decree is not such a child support order as is enforceable by contempt proceedings under Article 4639a, V.A.C.S. That article has reference to periodical support payments. This concept is carried into Rule 308–A, T.R.C.P., which authorizes attorney's fees for services in cases where the court has ordered periodical payments for the support of a child to be taxed and collected as costs. The authority of the court to order relator confined until the attorney's fee is paid cannot be found in Rule 308–A in so far as the attorney's fee was allowed for services performed in connection with the action to enforce the provisions of the decree relating to the trust fund.

 Nor do we think an award of attorney's fees is proper for services in prosecuting relator for contempt of court where it is determined that the conduct with which relator was charged would not support a finding of contempt. While we are not authorized to review the judgment of the trial court for error in a habeas corpus proceeding, we are of the opinion that to permit imprisonment for failure to pay the award of an attorney's fee in this case, in view of the circumstance that no appeal from the order awarding the attorney's fee is permitted, would deprive relator of his liberty without due process of law.

Some portion of the attorney's fee was awarded for the services rendered in enforcing the decree providing periodic payments for support and to that extent was authorized by Rule 308–A. This court lacks authority in this proceeding to review the evidence to determine what portion of the fee could be allocated to that service, and to reform the judgment so that it could be enforced. Since relator would be deprived of his liberty without due process of law if he is held in custody by reason of his refusal to pay the attorney's fee, that portion of the order must be held unenforceable.

It is the order of this court that relator be discharged from the custody of the Sheriff of Harris County, Texas, on payment of the fine of One Hundred ($100.00) Dollars and the court costs adjudged against him in Cause No. 758,052 in the Court of Domestic Relations No. Three, Harris County, Texas, after the elimination from such court costs of the sum of One Thousand ($1,000.00) Dollars awarded as an attorney's fee.