**Ex Parte Margie WYNNE.**

**No. 70778.**

Court of Criminal Appeals of Texas,
En Banc.

June 7, 1989.

Kay Davis, V.G. Kolius, Amarillo, for appellant.

Patrick A. Pirtle, pro se.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Justice.

The Court granted leave to file this original application for writ of habeas corpus in order to determine whether applicant is being illegally restrained in her liberty on account of her refusal to testify before a Potter County grand jury. See Article 20.-15, V.A.C.C.P. See also Tex. Const. art. V, § 5 (1891, amended 1980).

Applicant's husband, L.R. Wynne, was tried in 1985 for the offense of murder. After a jury returned a verdict of guilty, but before the punishment phase of trial, applicant's husband jumped bond and failed to appear for the punishment phase. After extensive efforts to locate Mr. Wynne failed, applicant was subpoenaed on January 6, 1989, to appear before a Potter County grand jury on January 12, 1989. The grand jury was then investigating the location of L.R. Wynne and also the identity of any other person who might know the location of, or be associated with L.R. Wynne.

Applicant filed a motion to quash the grand jury subpoena on January 12th, asserting a privilege not to be compelled to testify against her husband, pursuant to Tex.R.Crim.Evid. 504(2)(a). The motion to quash was denied by the impaneling judge [1] on the basis that "the State is not calling her as the spouse of the accused, but as a potential accused." Applicant was ordered to testify before the grand jury. We need not address applicant's claim that under Tex.R.Crim.Evid. 504(2)(a) she has an absolute privilege not to be called as a witness for the State, however we will grant relief.

Applicant was present, later on January 12th, when her name was called at the grand jury room door, but refused to appear or testify before the grand jury. The State offered applicant transactional immunity in exchange for her testimony. The impaneling judge approved the offer of transactional immunity and again ordered applicant to testify before the grand jury. Applicant returned to the grand jury where she again refused to testify. Applicant was then taken before the impaneling judge, who instructed her to appear on January 23, 1989, to show cause why she should not be held in contempt for failing to obey the court's order to testify before the grand jury.

On January 23rd, a show cause hearing was held and the judge entered a judgment of contempt in which applicant was adjudged to be in contempt of court and the 251st Grand Jury by failing to testify before the grand jury on January 12th as ordered. Punishment was assessed at confinement in the Potter County Jail until such time as applicant was willing to purge herself of contempt by testifying before the 251st Grand Jury.

We initially note that the record shows that on January 12th, the date applicant was subpoenaed to appear, the 251st Grand Jury was a "holdover" grand jury,[2] whose purpose was to investigate and determine the whereabouts of L.R. Wynne. Article 19.07, V.A.C.C.P. provides:

If prior to the expiration of the term for which the grand jury was impaneled, it is made to appear by a declaration of the foreman or of a majority of the grand jurors in open court, that the investigation by the grand jury of the matters before it cannot be concluded before the expiration of the term, the judge of the district court in which said grand jury was impaneled may, by the entry of an order on the minutes of said court, extend, from time to time, for the purpose of concluding the investigation of matters then before it, the period during which said grand jury shall sit, for not to exceed a total of ninety days after the expiration of the term for which it was impaneled ...

We note that 90 days have elapsed since January 12th and therefore the "holdover" grand jury has been discharged by operation of law. See Art. 19.07, supra.

In order to purge oneself of contempt of a grand jury, the contemnor must be willing to testify before and answer questions propounded by someone authorized by the grand jury. When the offended grand jury adjourns, the contempt matter becomes moot and a confined contemnor must be discharged from custody. *Ex parte Port*, 674 S.W.2d 772, 780 (Tex. Cr.App.1984).[3]

The question in the instant case is whether or not contempt of a "holdover" grand jury should be treated in the same manner as contempt of a regularly scheduled grand jury. Contempt in the latter

---

1. Judge Patrick Pirtle was the presiding judge of the 251st District Court and the impaneling judge of the 251st Grand Jury.

2. The record does not show when the grand jury term was extended, but a determination of the exact date is not necessary for a resolution of this cause for reasons stated infra.

3. Holding a recalcitrant witness in contempt and ordering confinement until willing to testify

"is evidently for the sole purpose of procuring answers to particular questions propounded by the grand jury before which they have been called to testify." *Ex parte Jackson*, 95 Tex.Cr.R. 200, 253 S.W. 287, 288 (1923). "It would seem evident that when the end is no longer possible of accomplishment, further resort to the means would be held futile." *Jackson*, supra, 253 S.W. at pp. 288–289. See also *Ex parte Moorehouse*, 614 S.W.2d 450, 452 (Tex.Cr.App.1981).

situation constitutes contempt of the grand jury and not contempt of the trial court. The grand jury must look to the impaneling judge to enforce its subpoena power. Once a grand jury has been discharged, the impaneling judge loses his power to enforce a contempt order. And, as noted above, when a regularly scheduled offended grand jury adjourns, the contempt matter becomes moot and the judge must discharge the contemnor from custody. See *Ex parte Port,* supra. It therefore logically follows that once a "holdover" grand jury discharges its 90 day term by operation of law, the judge has no further jurisdiction over the applicant and is without authority to continue to enforce a judgment of contempt of the "holdover" grand jury.

Therefore, applicant is entitled to relief. The writ of habeas corpus filed by applicant is granted and she is ordered discharged from any restraint that was imposed in this cause.

It is so ordered.

CLINTON, J., concurs in the result.

