DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JENNIFER M. WOODWARD,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-2413

[February 14, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mark Alan Speiser, Judge; L.T. Case No. 16-006129CT10A.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

Jennifer Woodward appeals a circuit court order finding her in both direct and indirect criminal contempt. We reverse the finding of indirect criminal contempt because the pertinent hearing transcript fails to disclose the conduct the judge identified as the basis of the contempt. We affirm the finding of direct criminal contempt.

The contempt proceedings in this case arose in a probate action involving the estate of Woodward's deceased aunt.

*The March 2, 2016 Hearing*

At a March 2, 2016 hearing on a motion for appointment of administrator ad litem, Woodward interrupted with commentary about the "ridiculous" nature of the proceeding. The petitioner's attorney complained about Woodward's comments from the "peanut gallery." The trial judge warned Woodward that any further outbursts when it was not her turn to speak would result in her removal from the courtroom.

After Woodward butted in again, the trial court gave her a "second and last" warning. He said that if she continued to speak out of turn, "then you're out of here. It's as simple as that."

Woodward continued to heckle the petitioner's attorney, stating that she "could have been to Disney World four times with my ninety-year-old dad," apparently a reference to the glacial pace of the probate proceeding. As she continued to talk over everyone, including the judge, the judge said "You are out. . . . You're out. . . . Get your face out of here."

On her way out of the courtroom, Woodward stated, "Fort Lauderdale came to my son and abducted my son out of my house in Oakland Park in 2013. I got bigger fish to fry." She added, "You can have the pictures and the real estate card and the Jesus stuff, because you need it." It is unclear what she meant by these observations. Woodward did not return to the courtroom for the remainder of the hearing.

After Woodward's exit, the petitioner's attorney discussed the necessity of an administrator for certain "property [that] is now vacant." Another attorney at the hearing also said "the house is supposed to be vacant." The trial court ultimately appointed an administrator ad litem for the limited purpose of listing the property for sale.

*The March 17, 2016 Hearing*

After the March 2 hearing, the petitioner's attorney learned that the property was not vacant, but that Woodward was residing there with her son. Petitioner's attorney moved for the initiation of contempt proceedings and the court held a hearing on the motion on March 17, 2016. He argued that Woodward lied to the court by representing that the house was vacant, when she was in fact residing there. Under questioning, Woodward admitted to residing at the property with her son. However, she denied that she lied to the court about the status of the house, reminding the court that she was asked to leave at the last hearing and did not get a chance to speak to the court. The trial judge instructed Woodward multiple times to answer the questions asked of her, and at one point warned her that if she was going to call people names, she would be held in immediate contempt of court.

*The Show Cause Order*

On March 21, 2016, the trial court entered an order directing Woodward to show cause why she should not be held in contempt or monetarily sanctioned for misrepresenting to the court on March 2, 2016

that "the subject residence was vacant when, in fact, [Woodward] and her son . . . were inhabiting the residence without a Court Order."

*The June 17, 2016 Show Cause Hearing and Contempt Order*

The show cause hearing was conducted on June 17, 2016. A court reporter was not present for the proceeding. As a result, there are no transcripts of the hearing in the appellate record.

On June 17, the trial court entered an order adjudicating Woodward guilty of direct and indirect criminal contempt. As to the indirect criminal contempt, the order stated in pertinent part:

> Woodward is also in indirect contempt of court and sentenced to 15 days in the Broward County Jail for misrepresenting to the Court on March 2, 2016 that the residence of the decedent was vacant when in fact she and her son Paul Woodward were inhabiting the residence without court order until at least March 17, 2016 and thereby impeding the ability of the administrator ad litem of the estate to sell the subject property.

The order also found Woodward in direct criminal contempt for "repeatedly" refusing to answer questions posed to her under oath after being directed to do so by the court, and other disruptive behavior.

The court ordered that the two 15-day jail sentences would run concurrently.

*There Can Be No Indirect Criminal Contempt Because the Transcript of the March 2 Hearing Discloses No Misrepresentations About the Subject Property*

The indirect criminal contempt finding for her misrepresentations at the March 2 hearing is subject to Florida Rule of Criminal Procedure 3.840. The contempt is "indirect" because whether Woodward and her son were actually living in the house in question did not occur in the presence of the court. Indirect contempt occurs

> not in the presence of a court or of a judge acting judicially, but at a distance under circumstances that reasonably tend to degrade the court or the judge as a judicial officer, or to obstruct, interrupt, prevent, or embarrass the administration of justice by the court or judge.

- 3 -

*Forbes v. State*, 933 So. 2d 706, 711 (Fla. 4th DCA 2006) (quoting *Ex parte Earman*, 95 So. 755, 760 (Fla. 1923)).

The transcript of the March 2 hearing reveals that Woodward made no representations concerning the occupancy of the property at issue. In fact, she was removed from the courtroom before there was any mention of occupancy of the house. We reverse that finding of contempt because there is no factual basis for it. On remand, the court shall discharge the order to show cause.

*A Court Reporter is not Required to be Present at a Direct Criminal Contempt Proceeding*

The second contempt finding challenged in this appeal is for direct criminal contempt, "where the misconduct occurred within the court's direct view and interfered with the court's ability to discharge its essential functions." *Plank v. State,* 190 So. 3d 594, 601 (Fla. 2016).

Woodward's sole ground for reversal is that there was no transcript of the proceedings because the trial court failed to secure the presence of a court reporter. She argues for a rule of automatic reversal of a direct criminal contempt where there is no record of the proceedings.

In *Martin v. State*, 743 So. 2d 591 (Fla. 4th DCA 1999), we rejected the notion that a court reporter was required in a case involving direct criminal contempt. We noted that direct criminal contempt operates under Florida Rule of Criminal Procedure 3.830, which provides that such contempt "may be punished summarily." *Id.* The unique aspect of direct criminal contempt is that it occurs within the presence of the court and justifies immediate action "to ensure the court's authority is vindicated and the court can conduct its necessary functions." *Plank,* 190 So. 3d at 603. "[T]he court must be able to act swiftly to ensure it can fulfill its obligations and preserve the dignity of court proceedings." *Id.* at 604. Direct criminal contempt can arise in civil proceedings where, unlike a criminal proceeding, the onus is on the parties to provide a court reporter. The need to quickly reassert order in the courtroom justifies immediate action, instead of a delay, to ensure the existence of a record of the proceeding. Rule 3.830 accommodates the need for some judicial review of a direct criminal contempt by requiring a judgment of guilt to "include a recital of those facts on which the adjudication of guilt is based." We decline Woodward's invitation to revisit *Martin.* The finding of direct criminal contempt is affirmed.

*Affirmed in part, reversed in part and remanded.*

FORST and KUNTZ, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***