# Supreme Court of Florida

_____

No. SC18-291
_____

**JENNIFER M. WOODWARD,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

December 19, 2019

PER CURIAM.

We initially accepted jurisdiction to review the decision of the Fourth

District Court of Appeal in *Woodward v. State*, 238 So. 3d 290 (Fla. 4th DCA

2018), on grounds of express and direct conflict with decisions of other district

courts of appeal.  *See* art. V, § 3(b)(3), Fla. Const.  Having considered the decision

of the Fourth District and the parties' arguments, upon further review, we have

determined that we should exercise our discretion and discharge jurisdiction.

Accordingly, we hereby dismiss review.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, and MUÑIZ, JJ., concur.
LABARGA, J., dissents with an opinion.

NO MOTION FOR REHEARING WILL BE ALLOWED.

LABARGA, J., dissenting.

When confronted with disruptive behavior in the courtroom, our courts must be able to immediately address such conduct and restore order. To that end, I fully recognize the necessity of the direct contempt power and support its use under appropriate circumstances. Moreover, I agree with the district court's conclusion in *Woodward* that a verbatim transcript of direct criminal contempt proceedings is not required. However, I dissent from the majority's decision to discharge jurisdiction in this case, where the order adjudicating Woodward guilty of direct criminal contempt is inadequate to support her conviction.

Indeed, it has long been recognized that to protect its authority and preserve the order of its proceedings, a court must be able to act swiftly and decisively to punish disruptive or disrespectful acts committed in its presence. *See Ex parte Edwards*, 11 Fla. 174, 186 (Fla. 1866) (explaining the contempt power "is the great bulwark established by the common law for the protection of courts of justice, and for the maintainance [sic] of their dignity, authority and efficiency"). Florida Rule of Criminal Procedure 3.830, "Direct Criminal Contempt," authorizes courts to summarily exercise their direct contempt powers, but given the potential consequences of a contempt adjudication, the rule also provides steps that a court

must take to ensure a defendant's right to due process of law.  Rule 3.830 provides

as follows:

> A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court.  The judgment of guilt of contempt shall include a recital of those facts on which the adjudication of guilt is based.  Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against the defendant and inquire as to whether the defendant has any cause to show why he or she should not be adjudged guilty of contempt by the court and sentenced therefor.  The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances.  The judgment shall be signed by the judge and entered of record.  Sentence shall be pronounced in open court.

Although a verbatim transcription of the direct contempt proceeding is not

necessary to serve these ends, due process requires that there be *some* record from

which it is possible to determine what the contemptuous conduct was, what

mitigating or excusing circumstances were present, and whether the trial court

followed the rule 3.830 procedure.

In this case, the entire record of the direct criminal contempt proceeding

consists of a single-page handwritten order adjudicating Woodward guilty of direct

criminal contempt.  The portion of the order that addresses direct criminal

contempt, the first paragraph, states in full:

> Jennifer Woodward is hereby sentenced to 15 days in the Broward County Jail for *repeatedly* refusing to answers [sic] questions posed to her under oath by attorney Marc [sic] Manceri and this Court after [being] repeatedly directed to do so by this Court and her totally disruptive behavior before this Court to the point of making

+ turning the subject hearing into a circus[-]like atmosphere after [being] repeatedly warned to cease and desist this behavior.[1]

Here, the content of the court's order is paramount because it is the *only* record for appellate purposes. As the sole record of Woodward's direct criminal contempt proceeding, this order is wholly inadequate. First, the order provides only a general description of Woodward's conduct. Second, it does not reflect that the trial court followed the rule 3.830 procedure by informing Woodward it was considering holding her in direct criminal contempt before actually doing so. Third, the order does not reflect that the trial court allowed Woodward to show cause why she should not be held in contempt or to present evidence to mitigate or excuse her guilt.

To support Woodward's conviction for direct criminal contempt, more is needed than a conclusory statement that she behaved contemptuously and was sentenced therefor. When the order adjudicating the defendant guilty is the only record of the proceeding, that order must state the factual basis for the conviction

---

1. In the second paragraph, the trial court held Woodward in indirect criminal contempt, a finding reversed by the Fourth District Court of Appeal because there was no evidence in the record to support it. *See Woodward v. State*, 238 So. 3d 290, 293 (Fla. 4th DCA 2018).

and must also affirmatively reflect that the trial court followed the procedure required by rule 3.830.[2]

The deficiencies in the trial court's order make it impossible to determine whether Woodward received due process of law. Despite these deficiencies, the effect of the majority's decision to discharge jurisdiction is that her contempt conviction will stand. Especially troubling is that although the record reflects that Woodward was arrested, it is unclear whether she has served her sentence. It is therefore possible that despite any record proof of the trial court's efforts to afford Woodward the required procedural protections, the majority's decision will yet require her to surrender to the Broward County Sheriff's Office to serve fifteen days in jail.

Regardless of whether Woodward has served her sentence, requiring her to serve a custodial sentence for direct criminal contempt amounts to a miscarriage of justice where the court's contempt order fails to show that she received due process. Although I do not believe that a verbatim transcript of direct criminal

---

2. Although not relevant to the legal sufficiency of the order, I am concerned that the contempt order at issue in this case was handwritten, evidently while the judge was still on the bench immediately after the events in question. When sentencing a person to a term in the county jail after a summary proceeding, a minimum standard would require that the judge take a momentary recess to return to chambers, reflect calmly on the situation, and rather than hurriedly filling out a form order, type an order on the computer that meets the requirements of rule 3.830.

contempt proceedings is necessary to protect contemnors' due process rights, I cannot ignore the possibility that Woodward's conviction is based on a flawed proceeding in which she did not receive due process of law.  I therefore dissent from the discharge of jurisdiction.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

     Fourth District - Case No. 4D16-2413

     (Broward County)

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

     for Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, and Celia A. Terenzio, Bureau Chief, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, Florida,

     for Respondent